**Ronald L. JONES, Plaintiff,**

v.

**Stephen J. PUCKETT and Diane Fergot, Defendants.**

No. 00–C–204–C.

United States District Court, W.D. Wisconsin.

Aug. 28, 2001.

## OPINION AND ORDER

CRABB, District Judge.

In this civil action for injunctive and monetary relief, plaintiff Ronald L. Jones contends that defendants Stephen J. Puckett and Diane Fergot violated his rights under the Fourteenth Amendment when they deprived him of liberty by labeling him a sex offender without providing him due process. Plaintiff is seeking as relief an order that defendants remove the sex offender label and other erroneous information from his records, stop subjecting him to sex offender rules and treatment programs, consider him for parole even if he does not participate in treatment programs or admit that he is a sex offender and pay him compensatory damages.

The case is before the court on defendants' motion for summary judgment. Defendants contend that 1) plaintiff may not bring a claim under 42 U.S.C. § 1983 because he asked in his complaint for the restoration of his good time and his chal-

lenge to his identification as a sex offender necessarily calls into question the validity of his parole revocation and he has not been vindicated by a state remedy or by a grant of habeas corpus; 2) defendants provided plaintiff with adequate process to protect the liberty interest at stake; 3) defendants are entitled to qualified immunity; 4) plaintiff does not have a protected liberty interest in his security classification; and 5) plaintiff has not been denied parole consideration since being labeled a "sex offender" for programming purposes. Defendants argue also that defendant Brian Cagle should be dismissed from the action because he has never been served with plaintiff's complaint. This argument is moot because I dismissed Brian Cagle from this case in an order entered November 29, 2000. Defendants' motion for summary judgment will be granted because I find that plaintiff has failed to show that he was deprived of a liberty interest or that if he was, he was denied process adequate to protect the interest, and additionally, that defendants are qualifiedly immune from any claim for damages.

I will not strike plaintiff's response to defendants' motion as defendants urge because plaintiff's affidavit was not sworn to under oath or properly notarized. An affidavit need not be notarized; it is sufficient that the affiant declare under penalty of perjury that the statements are true. 28 U.S.C. § 1746. Because plaintiff has made such a declaration, his response will be considered. However, because neither the court nor defendants have received copies of plaintiff's exhibits J, L–O and Q–S, I will not consider any facts proposed by plaintiff that rely on those exhibits.

From the findings of fact proposed by the parties and from the record, I find that the following facts are not disputed.

## UNDISPUTED FACTS

Plaintiff Ronald Jones is an inmate housed at Jackson Correctional Institution. At all relevant times, defendant Diane Fergot was employed at Oshkosh Correctional Institution as the Program Review Classification Coordinator and defendant Stephen Puckett was Director of the Bureau of Offender Classification and Movement for the Wisconsin Department of Corrections.

In 1978, plaintiff pleaded guilty to attempted murder and kidnaping in exchange for the dismissal of a sex offense charge and a jail escape charge. Under the plea agreement plaintiff reached with the state, his dismissed felony jail escape and sexual assault charges would not be read into the record, the state would retain the discretion to argue the dismissed charges and ask the court to consider those charges in plaintiff's sentencing, the parole board would not be able to consider the charges when plaintiff came up for parole and plaintiff would not be charged a second time with either dismissed offense. Plaintiff was sentenced to 40 years in prison.

On August 23, 1993 and November 27, 1993, the clinical services unit at the Oshkosh Correctional Institution performed clinical assessments of plaintiff to determine whether he had any treatment needs. On June 23, 1994, a staff psychologist at the Wisconsin Resource Center performed a clinical assessment of plaintiff. None of these assessments resulted in a determination that plaintiff needed sex offender or "denier's" treatment, that is, treatment for sex offenders who deny that they have committed a sex offense.

On August 3, 1995, Oshkosh Correctional Institution staff psychologist Brian Cagle wrote a sex offender assessment of plaintiff in which he recommended that plaintiff be required to complete sex offender treatment. Cagle recommended that plaintiff attend the denier's program because plaintiff "adamantly denie[d] committing any facet of the assault." On August 5, 1995, Cagle told plaintiff that he had performed a sex offender assessment on plaintiff's records and that he would recommend that plaintiff's records be amended to show that he was in need of sex offender treatment. Plaintiff waived his right to attend the program review committee meeting on August 29, 1995. The committee issued its recommendations and decision with regard to plaintiff that same day. Its review read in part as follows.

Scheduled review. We note and consider social worker comments, description of offense and recommendation. We are also aware of the fact that [plaintiff] waived his committee appearance. In reviewing the dynamics and nature of this offense which involved forced sexual intercourse as described by the social worker we note that no referral had ever been made to clinical services to determine if sex offender treatment was necessary. [Oshkosh Correctional Institution program review committee] referred this case to [Oshkosh Correctional Institution] clinical services for review. The case was reviewed by [Oshkosh Correctional Institution] clinical services (B.Cagle). . . . Considering the dynamics of the committing offense clinical services finds a [sexual offender treatment] program assignment appropriate for Mr. Jones and also identifies the need for the denier's program based on his lack of motivation to participate in [sexual offender treatment]. As such both programs will be added to his identified needs. As such, we also now note that he rates moderate in the area of program participation on the risk rating due to his identified need for denier's program.

On September 3, 1995, plaintiff asked Oshkosh Correctional Institution clinical services for a copy of Cagle's clinical evaluation. A copy was sent to plaintiff on September 22, 1995. On October 1, 1995, plaintiff wrote Cagle and objected to the recommendations that he attend sex offender treatment and denier's programs.

Following the August 29, 1995 program review committee hearing, plaintiff waived his right to appear at program review committee hearings on February 12, 1996, August 7, 1996, February 10, 1997, February 24, 2000, August 31, 2000 and September 21, 2000. A scheduled review was conducted in plaintiff's absence on January 14, 1999 and August 25, 1999. Since August 29, 1995, when the program review committee determined that it was necessary for plaintiff to attend sex offender treatment program or denier's program, the committee has never changed its assessment. The committee has never recommended that plaintiff's security classification be lowered from medium to minimum and defendant Puckett has never made a decision to lower plaintiff's security classification.

On October 1, 1997, the state of Wisconsin dismissed a Chapter 980 proceeding against plaintiff because it did not believe it could prove that plaintiff was a proper subject of such a proceeding. (Chapter 980 applies to civil commitments of sexually violent persons.) On October 5, 1999, the director of the Bureau of Offender Programs for the Wisconsin Department of Corrections indicated in a letter to the clerk of the Circuit Court for Rock County that the department was evaluating plaintiff again to determine his eligibility for civil commitment under Chapter 980 as a sexually violent person.

On October 28, 1997, plaintiff was paroled. On June 17, 1998, his parole was revoked because 1) plaintiff failed to tell his new landlord that he had been convicted of first degree attempted murder; 2) he failed to inform the landlord that he was on parole; 3) he failed to admit that he had sexually assaulted the woman he had tried to murder; and 4) he lied to his parole agent about the sex of the person living upstairs from his apartment. Plaintiff forfeited fifteen years of good time credit as a consequence of the parole revocation. On December 16, 1998, he waived his right to a parole hearing scheduled for January 1999. On November 20, 1999, he reapplied for parole consideration. On March 9, 2000, he received a parole hearing and was denied parole. The parole commission stated its reasons for denying plaintiff parole:

> You refuse or deny the need for sex offender treatment. You are an untreated offender and will be retained until you complete essential programming. Although the charge of 1st degree sexual assault was dismissed, the behavior still occurred and you are held accountable for completing the treatment program.

## OPINION

■ The initial question is whether *Heck v. Humphrey*, 512 U.S. 477, 114 S.Ct. 2364, 129 L.Ed.2d 383 (1994), bars plaintiff from bringing a suit for damages under 42 U.S.C. § 1983 because his claim implicates the validity of his parole revocation and current imprisonment. In *Heck*, the Court held that

> in order to recover damages for allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid, a § 1983 plaintiff must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination,

or called into question by a federal court's issuance of a writ of habeas corpus, 28 U.S.C. § 2254. *Id.*, at 486–87, 114 S.Ct. 2364. The bar is not an exhaustion requirement but a question of the accrual of an action. "[A] § 1983 cause of action for damages attributable to an unconstitutional conviction or sentence does not accrue until the conviction or sentence has been invalidated." *Id.* at 489–90, 114 S.Ct. 2364. Before then, a plaintiff has no cognizable cause of action.

Plaintiff is not bringing a direct challenge to his parole revocation. He has denied any claim to the restoration of forfeited good time credits as any part of his claim for relief, Plt.'s Br., dkt. # 52, at 4. Nevertheless, it still must be determined whether a decision on the merits of his case will necessarily imply the invalidity of his parole revocation or, alternatively, that such a decision would result in an automatic shortening of plaintiff's sentence by granting him parole. If it would, the case must be dismissed because plaintiff has not shown that he has had his parole revocation reversed. He has no cause of action unless I can find that his suit is neither a direct nor an implicit challenge to the legitimacy of his parole revocation and the accompanying loss of good time or to the length of his sentence. In order to make that finding, it is necessary to trace a fairly complicated path.

Plaintiff's primary claim is that he should not be treated as a sex offender without being given a fair opportunity to be heard on the decision to characterize him as a sex offender. If he can prove that he is entitled to more in the way of due process protections than he was afforded when the decision to consider him a sex offender was made in August 1995, it would follow that he was treated improperly as a sex offender thereafter. It would follow also that he should not have been subject to sex offender conditions when he was released on parole in October 1997 and that he should not have had his parole revoked for violating illegal conditions. If, therefore, he was revoked for violating conditions relating to his sex offender status, he may well be calling into question the validity of his parole revocation. However, *Heck* left open the possibility that a § 1983 suit could be brought to challenge allegedly unconstitutional actions that led to extended confinement if the confinement might have followed even if the unconstitutional actions had not occurred.

In *Heck*, the Court suggested that a convicted defendant could bring a suit for damages under § 1983 to challenge an illegal seizure of evidence relied upon for conviction if the evidence might have been obtained in a lawful manner. *Heck*, 512 U.S. at 487 n. 7, 114 S.Ct. 2364. In *Copus v. City of Edgerton*, 151 F.3d 646, 648–49 (7th Cir.1998), the court of appeals made it plain that when a plaintiff brings a § 1983 action, the burden does not fall to him to show that *Heck* is no obstacle because the evidence could have been obtained in a lawful way; rather, it is up to the court to decide whether it might have been possible for the police to have obtained the evidence lawfully. The court observed that "It is quite possible that the court would have admitted the evidence uncovered during that search under the independent source and inevitable discovery doctrines." *Id.* at 649. *See also Clayton–El v. Fisher*, 96 F.3d 236, 242 (7th Cir.1996): "If resolution of the issue in federal court would not *necessarily* undermine the state court's ability to make an independent determination of issues cognizable in habeas corpus, then that issue is cognizable under § 1983, regardless whether a state court has ruled on that issue." (Emphasis in original.)

■ I believe that a faithful reading of *Copus* requires me to allow plaintiff's § 1983 challenge to proceed if I can find a

possibility that plaintiff's parole might have been revoked even without his violation of the allegedly unconstitutional conditions. Certainly, there is a possibility that plaintiff's parole would have been revoked simply because he lied to his parole officer about the sex of the resident in the upstairs apartment or because he failed to tell his landlord that he was on parole and had been convicted of first degree attempted murder. Lying about any aspect of supervision supplies an adequate ground for revocation, whether the subject of the lie is a legal or illegal condition. Therefore, I conclude that *Heck* does not bar plaintiff's challenge.

This conclusion appears to be consistent with *Antonelli v. Foster,* 104 F.3d 899 (7th Cir.1997), in which the court of appeals explained that *Heck* applies to cases premised "on the invalidity of confinement pursuant to some legal process, whether a warrant, indictment, information, summons, parole revocation, conviction or other judgment, or disciplinary punishment for violation of a prison's rules" and does not apply to cases based on a challenge to "official misconduct unrelated to legal process—an unconstitutional arrest without a warrant, the gratuitous beating of the arrested person, his confinement in the Black Hole of Calcutta, whether pre- or postconviction, and so forth." *Id.* at 901. Plaintiff's parole revocation has aspects of the "confinement pursuant to some legal process" that the court put in the category to which *Heck* applies. On the other hand, it is distinguishable. Plaintiff is not objecting to the process at his revocation hearing but to the validity of the underlying parole conditions. This is similar to a challenge to the sufficiency of the evidence. Because plaintiff's revocation was based on legal grounds as well as allegedly illegal ones, a decision in plaintiff's favor would not require his immediate release on parole as a remedy for an improper revocation. And because participation in sex offender treatment programs is not a mandatory precondition for a new parole release decision, a decision in plaintiff's favor would not require an immediate release on this ground either. *Cf. Neal v. Shimoda,* 131 F.3d 818, 824 (9th Cir.1997) (holding that inmates' challenge to sex offender label did not undermine validity of their convictions or continuing confinement because victory would merely "mak[e] them *eligible* for parole consideration according to the terms of their sentences" and would "in no way *guarantee* parole or necessarily shorten their prison sentences by a single day.") (emphases in original).

## I. LIBERTY INTEREST

In the order granting plaintiff leave to proceed *in forma pauperis,* I held that plaintiff had a liberty interest in not being labeled a sex offender and in not losing his good time credits. Now that plaintiff has disavowed any interest in the restoration of those good time credits, it is necessary to take a second look at the question whether plaintiff's claim raises a liberty interest. If it does, then plaintiff is entitled to the procedural protections set out in *Wolff v. McDonnell,* 418 U.S. 539, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974): "advance written notice of the claimed violation and a written statement of the factfinders as to the evidence relied upon and the reasons for the disciplinary action taken," *id.* at 563, 94 S.Ct. 2963, a chance to "call witnesses and present documentary evidence in his defense when permitting him to do so will not be unduly hazardous to institutional safety or correctional goals," *id.* at 56694 S.Ct. 2963, and an impartial decision maker. *Id.* at 571, 94 S.Ct. 2963.

Three federal appeals courts have held that in certain circumstances, classification as a sex offender implicates a liberty interest, triggering due process protections. In *Neal,* 131 F.3d 818, the Court of Appeals

for the Ninth Circuit addressed a sex offender statute under which the Hawaii Parole Authority agreed to identify all sex offenders in custody, that is, any inmate who had been convicted of any sex offense or who had engaged in sexual misconduct during the commission of a crime. To become eligible for parole, each inmate so identified had to participate in twenty-five sessions of treatment and to admit that he had committed the alleged offense. The court of appeals found that the combination of the stigmatizing consequence of being labeled a sex offender coupled with the mandated completion of a treatment program created "the kind of deprivations of liberty that require procedural protections." *Id.* at 830. In reaching this conclusion, the court relied on *Vitek v. Jones,* 445 U.S. 480, 100 S.Ct. 1254, 63 L.Ed.2d 552 (1980), a case in which inmates had challenged a Nebraska law that permitted prison officials to identify certain inmates as mentally ill and transfer them without a hearing to mental institutions for involuntary confinement. The Supreme Court held this procedure unconstitutional because the loss of liberty produced by an involuntary commitment to a mental institution is "more than a loss of freedom from confinement," *id.* at 492, 100 S.Ct. 1254, and beyond the range of conditions of confinement justified by imposition of a prison sentence, *id.* at 493, 100 S.Ct. 1254. The Court added that the stigma of the commitment " 'can have a very significant impact on the individual,' " *id.* at 492, 100 S.Ct. 1254 (quoting *Addington v. Texas,* 441 U.S. 418, 426, 99 S.Ct. 1804, 60 L.Ed.2d 323 (1979)), and that compelled treatment in the form of behavior modification programs was a proper factor to be taken into consideration by the district court. *Id.* Using *Vitek* as its guide, the court of appeals held that Hawaii could not classify inmates as sex offenders and mandate their participation in treatment programs as a condition for parole without

holding a hearing. The court held that it must provide a hearing and that the hearing had to comply with the requirements in *Wolff,* 418 U.S. 539, 94 S.Ct. 2963.

In *Chambers v. Colorado,* 205 F.3d 1237 (10th Cir.2000), the Court of Appeals for the Tenth Circuit reached a result similar to *Neal:* the stigma of classification as a sex offender plus the loss of the opportunity to earn the full amount of good time available to other inmates implicated a liberty interest. Colorado law required sex offender treatment for persons identified as needing it. Although Chambers was identified as an unconvicted sex offender who had committed a sex offense, he was not required to participate in sex offender counseling until five years after he had been identified, during which time he continued to earn ten days of good time each month. In 1992, he was confronted again about his offense and refused to admit it. Because of the refusal, he was not allowed to participate in a sex offender treatment program and was docked three days of good time a month. In the court's view, Chambers had a liberty interest in avoiding the label of sex offender and its mandatory consequences that required the Colorado Department of Corrections to afford him a hearing at which he could challenge the label. "We think those consequences [the opportunity to earn ten days of good time rather than seven] are a benefit which cannot be taken away without some process." *Id.* at 1243.

In *Kirby v. Siegelman,* 195 F.3d 1285, 1292 (11th Cir.1999), a per curiam court held that "the stigmatizing effect of being classified as a sex offender constitutes a deprivation of liberty under the Due Process Clause." That language suggests that nothing more than the label is required to raise a liberty interest. It should be noted, however, that the label carried with it the consequences of

participation in sex offender treatment sessions as a prerequisite for parole eligibility, ineligibility for minimum custody classification and the probability of community notification upon release. In these circumstances, the court was satisfied that the labeling exceeded "the sentence imposed by the court." *Id.* at 1291.

I am not persuaded by these appellate decisions that plaintiff has a liberty interest in not being identified in prison records as a person in need of sex offender treatment and in not having a recommendation for participation in treatment programs. It is common for persons entering prison to have an evaluation of the reasons for their criminal behavior and their treatment needs, for the resulting evaluations to be recorded in their records and for the authorities who make programming and parole decisions to base their decisions in whole or in part on their sense of the effort a particular inmate has made to confront the problems that have been identified as contributing to his criminal conduct. Because it is common procedure, plaintiff cannot argue that his evaluation and identification as a person in need of sex offender treatment is the "atypical and significant hardship on the inmate" that creates a liberty interest. *Sandin v. Conner,* 515 U.S. 472, 484, 115 S.Ct. 2293, 132 L.Ed.2d 418 (1995) ("[Liberty] interests will be generally limited to freedom from restraint which, while not exceeding the sentence in such an unexpected manner as to give rise to protection by the Due Process Clause of its own force, nonetheless imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life.") (internal citations omitted). Plaintiff's identification as a person in need of sex offender treatment was not made a matter of public knowledge by defendants and the identification did not carry with it mandatory participation in treatment as a condition of pa-

role. In fact, he was granted parole after the identification had been made, even though he had never agreed to participate in treatment.

To the extent that I indicated in earlier orders entered in this case that the stigma of being labeled as a sex offender was sufficient to implicate a liberty interest, my statements were based on an inaccurate understanding of exactly the sort of "labeling" that had been applied to plaintiff. My current understanding from the undisputed facts is that he is identified in his prison records as needing sex offender treatment but that defendants have never made this identification public knowledge, either within the general population of the prison or in the outside world. (If plaintiff were to participate in treatment groups, as directed, the other members of his group and the leader would know of his identification as a sex offender. I do not consider that this limited knowledge would be the equivalent of public knowledge.)

I believe that in the appellate decisions I have discussed, the facts are distinguishable from those in this case, insofar as I can make out exactly what the facts are in those opinions. In *Neal,* 131 F.3d 818, for instance, the plaintiff showed that the sex offender programs were mandatory requirements for parole or for the earning of good time. *Cf. Neal,* 131 F.3d at 830: "[Once a targeted inmate has been labeled as a sex offender], it is *mandatory* that the labeled inmate successfully complete the specified treatment program in order to become eligible for parole"; *see also Chambers,* 205 F.3d at 1243 (addressing mandatory treatment programs as preconditions for parole eligibility). On the other hand, in *Neal,* 131 F.3d at 830, the court acknowledged that it would probably have held that the mandatory requirement of completing the program successfully withstood legal challenge had the requirement

not been coupled with the attachment of the term "sex offender" to the inmate. I cannot tell from the opinion what consequences the "labeling" had in *Neal;* that is, whether it became public knowledge. It seems from the opinion that the court of appeals believed that it would. Certainly, it seems likely that in *Kirby,* 195 F.3d 1285, the court gave weight to the connection between the classification of an inmate as a sex offender and the required community notification that would be required when he left prison.

█  Even if plaintiff's identification as being a sex offender in need of treatment required some due process, defendants provided plaintiff with adequate process when the program review committee met to decide that he needed to complete a sex offender treatment program. Plaintiff had notice of the hearing and of Cagle's decision to recommend plaintiff for sex offender identification and treatment; he had an opportunity to be heard; and he received a written decision that laid out the reasons for the decision. In my view, these protections were sufficient to protect any right he had in not being identified in his records as a sex offender in need of treatment. He did not have Cagle's written report before the hearing and he probably did not have the right to call witnesses in his behalf as he would have had he been entitled to the full panoply of procedures in *Wolff,* 418 U.S. 539, 94 S.Ct. 2963. He has not alleged that he would not have had the opportunity to present documentary evidence at the hearing had he wanted to, and as *Wolff* requires, or that he did not have an objective decision maker. Nonetheless, to the extent that plaintiff had any liberty interest in the decision to recommend he participate in sex offender treatment, the procedures provided him were sufficient to meet the demands of due process.

Moreover, plaintiff had a copy of Cagle's report, which included Cagle's recommendations and the justification for them, almost five months in advance of his second opportunity for a hearing. Despite this fact, he chose not to attend the hearing and explain his objections to the recommendations or to the committee's determination.

## II.  QUALIFIED IMMUNITY

█  Government officials performing discretionary functions are entitled to qualified immunity from liability for civil damages unless their conduct violates clearly established statutory or constitutional rights of which a reasonable person would have known. *Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982). Courts employ a two-part analysis to determine whether governmental officials are protected by qualified immunity. First, the court determines whether the plaintiff's claim states a violation of his constitutional rights. If the first step is satisfied, the court then determines whether those rights were clearly established at the time the violation occurred. *Wilson v. Layne,* 526 U.S. 603, 119 S.Ct. 1692, 143 L.Ed.2d 818 (1999). *See also Saucier v. Katz,* — U.S. —, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001) (emphasizing importance of close analysis of factual allegations in determining whether claim states constitutional violation).

█  Even if plaintiff had been able to show that he had a protected interest under the Fourteenth Amendment before he was classified as being in need of sex offender treatment, defendants would be shielded from liability for damages by qualified immunity. At the time that plaintiff was identified as needing sex offender treatment in 1995, there was no case law in any circuit holding that an

inmate has a liberty interest in not being classified as a sex offender. *Neal* was not decided until December 1997; other courts of appeals did not rule until 1999 and 2000. *Chambers,* 205 F.3d 1237; *Kirby,* 195 F.3d 1285.

### III. SECURITY CLASSIFICATION

Defendants argue that plaintiff has no liberty or property interest in his security classification. In the September 25, 2000 order, I allowed plaintiff to amend his complaint to proceed against defendants on his claim that defendants failed to provide him with due process before depriving him of his liberty interest in good time credits and not being labeled a sex offender but I denied plaintiff leave to proceed on a claim that he was deprived without due process of a liberty interest in his security classification. I held that being subject to a higher security classification does not impose an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin,* 515 U.S. at 483–84, 115 S.Ct. 2293. Defendants' motion for summary judgment on the ground that plaintiff has no liberty interest in his security classification will be denied as moot.

### IV. DENIAL OF PAROLE CONSIDERATION

Defendants contend that there is no merit to plaintiff's allegation that he has been denied parole consideration because he has been labeled a sex offender for programming purposes. The undisputed facts show that plaintiff has been afforded parole consideration (indeed, he was released on parole in 1997). As I have explained, there is no merit to his claim that he was entitled to due process before the recommendation was made that he should participate in sex offender treatment programs. Therefore, there is no legal reason why the board may not take into account his willingness to participate in such programs when considering whether he is a good candidate for early release.

### V. FIFTH AMENDMENT

The parties dispute whether plaintiff's Fifth Amendment right against self-incrimination is implicated by the requirement of the sexual offenders treatment program that he admit that he is a sex offender. Plaintiff was not granted leave to proceed on any claim involving the Fifth Amendment. Thus, it is unnecessary to address these arguments.

### ORDER

IT IS ORDERED that

The motion of defendants Stephen J. Puckett and Diane Fergot to strike plaintiff Ronald L. Jones's response to defendants' motion for summary judgment is DENIED;

The motion of defendants Stephen J. Puckett and Diane Fergot for summary judgment is GRANTED with respect to all of plaintiff's claims, except his claim that he was deprived of a liberty interest in his security classification without being afforded due process, which is denied as MOOT.

The clerk of court is directed to enter judgment for defendants and close this case.