United States Court of Appeals
Fifth Circuit

**F I L E D**

**May 13, 2005**

Charles R. Fulbruge III
Clerk

REVISED MAY 31, 2005

IN THE UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT

———————————

No. 03-50743

———————————

TONY RAY COLEMAN,

                                        Petitioner-Appellant,

versus

DOUG DRETKE, DIRECTOR, TEXAS
DEPARTMENT OF CRIMINAL JUSTICE,
CORRECTIONAL INSTITUTIONS DIVISION,

                                        Petitioner-Appellant.

Appeal from the United States District Court for
the Western District of Texas
_____

ON PETITION FOR REHEARING EN BANC

Before REAVLEY, BENAVIDES and PRADO, Circuit Judges.

PER CURIAM:

Because less than a majority of judges in active service have voted in favor of

granting the petition for en banc rehearing, the petition is denied. To avoid

1

confusion about our decision, we think it necessary that we write further to correct the mistakes of the accompanying dissent on the record and the law.

## I.  The Record

Tony Ray Coleman has never been convicted of a sex offense or otherwise found to be a sex offender.  He did not "stipulate" to sex offender conditions upon his release on January 17, 2001, as the dissent states.  The parole board imposed those conditions a month after he had been released without allowing Coleman any opportunity to object.  The conditions took by action of the parole board and Coleman was then required to acknowledge their imposition.  The dissent repeats a new and unexplained assertion from the state's petition for rehearing that the requirement for registration as a sex offender has been dropped.  Coleman was required by the board and his parole officer to register as a sex offender, and did register with the Austin police.  Coleman remains imprisoned because he failed to submit to sex offender therapy.

The dissent states that we do not challenge the conduct alleged in Coleman's sexual assault indictment.  As the state has never established the truth of those allegations in a criminal trial or other proceeding, we have no basis for assessing their veracity, and to assume them to be either true or false would be improper.

The dissent maintains that it was "pure conjecture" for the panel to rely on

2

the website of the Texas Council on Sex Offender Treatment to determine that the state's sex offender treatment is behavior modifying. Coleman cited to and relied on the same website in his brief and no contradiction was made by the state to that or to Coleman's characterization of sex offender therapy, either in its appellate brief or at oral argument. The attempt to object for the first time on petition for rehearing comes late. *See Arenson v. S. Univ. Law Ctr.*, 53 F.3d 80, 81 (5th Cir. 1995). Furthermore, we fail to see any merit to an objection to the panel taking judicial notice of the state agency's own website. As the panel explained, the Texas Council is charged by statute with developing strategies and standards for the treatment of sex offenders in Texas. TEX. OCC. CODE § 110.151 (Vernon 2004). There is no support in this record for the assertion in the state's petition for rehearing that the treatment on which Coleman's release was conditioned is anything other than the intrusive and behavior-modifying treatment outlined on the website.

The panel relied on the invasive and behavior-modifying nature of sex offender therapy. We said that, "due to its highly invasive nature, Texas's sex offender therapy program is 'qualitatively different' from other conditions which may attend an inmate's release." *Coleman v. Dretke*, 395 F.3d 216, 223 (5th Cir. 2004). The dissent erroneously states that we have required pre-deprivation process

3

whether or not invasive physical treatment is contemplated.

The dissent erroneously treats Coleman's case as a mere challenge to the nature of his confinement rather than a claim for release, as if mandatory supervision is a level of control different from parole. Under Texas law, mandatory supervision is statutorily mandated when the inmate has accrued a certain level of good conduct time, and the parole board has less discretion in denying an inmate's release on mandatory supervision than on parole. TEX. GOV'T CODE §§ 508.001(5), 508.001(6), 508.141, 508.147(a) (Vernon 2004); *Ex parte Retzlaff*, 135 S.W.3d 45, 48-49 (Tex. Crim. App. 2004). The condition that Coleman reside in a halfway house until employed is also immaterial. The condition, like all conditions of release, is a constraint on the freedom of the releasee, but it does not alter the "quantum change in the level of custody" that occurs when an individual is allowed to live outside prison walls, whether on parole or mandatory supervision. *See Wilkinson v. Dotson*, __ U.S. __, 125 S.Ct. 1242, 1250 (2005) (Scalia, J., concurring).

## II.  The Law

The dissent argues that the panel mis-applied and extended *Vitek v. Jones*, 445 U.S. 480 (1980). And it argues that the panel failed to adhere to the deferential standard of review applicable to state habeas proceedings under the Anti-terrorism

4

and Effective Death Penalty Act (AEDPA).

According to the dissent, Coleman failed to show that his situation is in line with the material facts of *Vitek* by establishing that the conditions placed on his release on mandatory supervision caused stigma and involved intrusive behavior-modification treatment. We have answered that contention above. The new argument that registration has been dropped from the case does not change matters. *Vitek* does not require publication to establish stigma. In fact, the plaintiff in *Vitek* had not been required to register the fact of his classification as mentally ill, and the Court nowhere indicated that his treatment providers would not keep his records confidential. *See Vitek*, 445 U.S. at 483-86 & 492. The Court nevertheless found it "indisputable" that commitment to the mental hospital alone could cause "adverse social consequences to the individual" and stated that "[w]hether we label this phenomena 'stigma' or choose to call it something else[,] we recognize that it can occur and that it can have a very significant impact on the individual." *Id.* at 492 (internal quotation marks omitted). Whether or not Coleman must now list his name on an official roster, by requiring him to attend sex offender therapy, the state labeled him a sex offender—a label which strongly implies that Coleman has been convicted of a sex offense and which can undoubtedly cause "adverse social consequences." *See id.*; *Neal v. Shimoda*, 131 F.3d 818, 829 (9th Cir. 1997) ("We

5

can hardly conceive of a state's action bearing more 'stigmatizing consequences' than the labeling of a prison inmate as a sex offender."); *Vander Zee v. Reno*, 73 F.3d 1365, 1369 (5th Cir. 1996) (stating that a statement causes stigma if it is both false and implies that the plaintiff is guilty of serious wrongdoing). The stigma aspect of the case is thus not mooted by the state's decision to remove Coleman from its sex offender registry. The facts of the present case are in line with *Vitek*'s stigma element.

As explained above, the state's imposition of sex offender status and therapy as conditions of Coleman's release fits squarely within the material facts of *Vitek*, and the panel's decision was thus a proper exercise of deference under AEDPA. The dissent claims that application of *Vitek* to sex offender conditions cannot be clearly established under AEDPA because courts have found that the law in this area is not clearly established for purposes of qualified immunity. To support this argument, the dissent states that the AEDPA standard and the qualified immunity standard are logically similar. The dissent's reliance on qualified immunity analysis is misplaced. Habeas law and the law of qualified immunity are "doctrinally distinct." *Williams v. Taylor*, 529 U.S. 362, 380 n.12 (2000) (Stevens, J.). For qualified immunity purposes, law is clearly established if it would be clear to a reasonable official that her conduct was unlawful in the situation she confronted.

6

*Saucier v. Katz*, 533 U.S. 194, 202 (2001). For AEDPA purposes, clearly established federal law is "whatever would qualify as an old rule under our *Teague* jurisprudence," as long as the old rule was decided by the Court. *Williams*, 529 U.S. at 412. Under *Teague*, a new rule is one that "breaks new ground or imposes a new obligation on the States or the Federal Government" or that is "not *dictated* by precedent existing at the time the defendant's conviction became final." *Teague v. Lane*, 489 U.S. 288, 301 (1989) (emphasis in original). The two standards thus require distinct analyses and cannot be conflated merely because they employ common terminology. *Williams*, 529 U.S. at 380 n.12 (Stevens, J.) ("We are not persuaded by the argument that because Congress used the words 'clearly established law' and not 'new rule,' it meant in [28 U.S.C. § 2254(d)(1)] to codify an aspect of the doctrine of executive qualified immunity rather than *Teague*'s retroactivity bar. . . . Congress had *Teague*—and not any *unrelated* area of our jurisprudence—specifically in mind in amending the habeas statute. . . . We will not assume that in a single subsection of an amendment entirely devoted to the law of habeas corpus, Congress made the anomalous choice of reaching into the doctrinally distinct law of qualified immunity[.]") (emphasis added). *Vitek* imposed an obligation on the states to provide process before imposing stigmatizing classifications and concomitant behavior modification therapy on individuals in their

7

custody. The panel opinion does nothing more.

The dissent implies that the Supreme Court's decision in *Connecticut Department of Public Safety v. Doe*, 538 U.S. 1 (2003), illustrates the Court's unwillingness to afford due process protection to "sex offenders"—a term the dissent appears to define as anyone who has been charged with a sex offense, even if never convicted on that charge. As the panel opinion noted, *Doe* is distinguishable. *Coleman*, 395 F.3d at 223 n.30. First, the *Doe* plaintiff challenged sex offender registration alone—the case did not involve behavior modification therapy, and thus fell outside *Vitek*'s holding. Second, the plaintiff sought a hearing to determine his current dangerousness and not his status as a sex offender—he had been convicted of an offense enumerated in the registration statute. Because application of the registration statute turned on conviction rather than current dangerousness, the Court found that the plaintiff was not entitled to the hearing he sought regardless of whether the statute deprived him of a liberty interest; whether or not the plaintiff was currently dangerous was immaterial under the statutory scheme. *Doe*, 538 U.S. at 7. The Court emphasized that the plaintiff in *Doe* had been convicted of an enumerated offense, and thus "ha[d] already had a procedurally protected opportunity to contest." *Id.*; *see also Gwinn v. Awmiller*, 354 F.3d 1211, 1223-24 & n.6 (10th Cir. 2004) (holding that summary judgment

8

was inappropriate on a procedural due process claim brought by an individual never convicted of a sex offense based on the state's requirement that he register as a sex offender upon release from prison, and stating that "*Doe . . .* does not foreclose this due process claim" because the plaintiff, unlike the plaintiff in *Doe*, had not been convicted of a sex offense and alleged that he had had no other procedure through which to contest). In the present case, we have a petitioner who has never been convicted of an offense enumerated in Texas's registration statute who challenges not only the state's imposition of sex offender status on him but also its requirement that he undergo invasive behavior-modification therapy. On those facts, *Vitek*, and not *Doe*, is the relevant Supreme Court authority.

Finally, the dissent suggests that Coleman was required to bring his case under 42 U.S.C. § 1983 as a challenge to his conditions of confinement rather than as a habeas claim seeking his release. In so arguing, the dissent implies that release from prison to mandatory supervision—the remedy Coleman seeks—is merely a change in the condition of Coleman's confinement rather than a release from custody for habeas purposes. We have answered that above, but it is well established that release from physical confinement in prison constitutes release from custody for habeas purposes, even though the state retains a level of control over the releasee. *Preiser v. Rodriguez*, 411 U.S. 475, 487-88 (1973) (stating that suits

9

attacking the duration of physical confinement are within the core of habeas corpus); *see Malchi v. Thaler*, 211 F.3d 953, 957-58 (5th Cir. 2000) (holding, in a habeas case, that Texas's pre-1996 mandatory supervision scheme created a constitutional expectancy in early release, but denying relief where the connection between the alleged injury and the timing of petitioner's release was too speculative); *Retzlaff*, 135 S.W.3d at 48-49 (holding, in a habeas case, that Texas's post-1996 mandatory supervision scheme creates a liberty interest in early release).

Even if Coleman's challenge could be viewed as a condition of confinement case, the dissent's argument that he must sue under § 1983 is premised on the notion that § 1983 is the exclusive avenue by which to attack conditions of confinement. While the Supreme Court has held that certain claims must be brought under the habeas statute rather than § 1983, neither the Supreme Court nor this court has held that certain claims must be brought under § 1983 rather than habeas. *Docken v. Chase*, 393 F.3d 1024, 1030 n.6 (9th Cir. 2004); *see Preiser*, 411 U.S. at 499. In *Preiser*, the Court held that habeas is exclusive of § 1983 in certain situations because the habeas statute is more specific than § 1983. *Preiser*, 411 U.S. at 489-90. *Preiser*'s rationale does not support the proposition that the more general § 1983 should be exclusive of the more specific habeas in some situations. *See Preiser*, 411 U.S. at 504 (Brennan, J., dissenting) ("[E]ven under the [majority]'s

10

approach, there are undoubtedly some instances where a prisoner has the option of proceeding either by petition for habeas corpus or by suit under § 1983.").

### III.  Conclusion

For the reasons given in the panel decision, *Coleman v. Dretke*, 395 F.3d 216 (5th Cir. 2004), and because the sexual offender conditions of Coleman's mandatory supervision impacted his liberty interest and were imposed without due process, the revocation of his release on mandatory supervision is set aside.

The petition for rehearing is denied.  The mandate shall issue instanter, remanding to the district court with instructions to issue the writ to order Coleman's release under its original terms unless the state promptly conducts further proceedings justifying Coleman's confinement pursuant to state law and consistent with the opinion of this court.

EDITH H. JONES, Circuit Judge, with whom JOLLY, SMITH, BARKSDALE, GARZA, DEMOSS, and CLEMENT, Circuit Judges, join, dissenting from the denial of rehearing en banc:

Because this habeas decision threatens serious interference with Texas's treatment of sex offenders, and potentially of other parolees who are now required to undergo treatment or counseling, the case should have been reheard en banc. On the record he advanced, Coleman should not receive habeas relief entitling him to a hearing before he undergoes mandatory sex offender counseling.

The panel seriously erred on two fronts. First, it has extended liberty interest protection to Coleman and other sex offenders without Supreme Court imprimatur. Compare Connecticut Dep't of Pub. Safety v. Doe, 538 U.S. 1, 8, 123 S. Ct. 1160, 1165 (2003) (explicitly refusing to decide whether sex a offender registration law violates a registrant's liberty interest). Second, although couched as holding that the state courts' ruling was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," 28 U.S.C. § 2254(d)(1), the panel decision misapplied AEDPA and Teague v. Lane[1] by making a new rule of law in a habeas case.

---

[1] 489 U.S. 288, 109 S. Ct. 1060 (1989).

In a novel substantive holding for this circuit, the panel concluded that Texas violated Coleman's procedural due process rights when it imposed sex offender registration and therapy requirements without giving him advance notice and the opportunity for a hearing on that specific issue.[2] The panel cites numerous Supreme Court cases, but none is controlling. The panel relies most heavily on Vitek v. Jones, 445 U.S. 480, 100 S. Ct. 1254 (1980), in which the Court held that a prisoner has a constitutionally protected liberty interest in not being subjected, without pre-deprivation process, to an involuntary mental health commitment, if it entails both significant social stigma and mandatory behavior modification programs. Id. at 492-94, 100 S. Ct. at 1263-64. The Court noted, however, that

---

[2]While on parole for burglary, Coleman was indicted for aggravated sexual assault of a child and indecency with a child by contact; specifically, for sexually assaulting a twelve-year-old, mentally retarded girl. R. 282. Although the panel now attempts to question this reading of the record in its rehearing order, the panel does not challenge Coleman's precipitating conduct. He pleaded guilty to and was convicted of only misdemeanor assault. In exchange for this guilty plea, the state dropped most of the charges in the initial indictment; however, the first paragraph of the indictment was not dropped. R. 76 (waiving only "Count II and all habitual paragraphs and Count I Paragraph II"). The preserved paragraph reads, in pertinent part, "Tony Coleman . . . did then and there knowingly and intentionally cause the penetration of the female sexual organ of . . . , a child younger than 14 years of age and not his spouse, by his penis." R. 72.

When Coleman was moved to a halfway house, on supervised "release," the state conditioned his transfer, inter alia, on Coleman's registering as a sex offender and receiving therapy. The panel correctly dismissed Coleman's substantive due process claim founded on the state's sex offender program.

13

"Many . . . restrictions . . . [at the mental hospital] might not constitute the deprivation of a liberty interest retained by a prisoner." Id. at 494, 100 S. Ct. at 1264. The Court's decision was limited to treatment of the mentally ill and had to and did turn on stigmatizing consequences and mandatory behavior modification treatment. Id.

Even if it is logical to make the constitutional leap from treatment of the mentally ill, who are helpless as to their condition and its consequences, to sex offenders, who are predators, the twin factual constraints of Vitek — stigmatizing consequences and mandatory behavior modification — are lacking in this case. With due respect, the panel misstated that Coleman must register as a sex offender; the state dropped this requirement at Coleman's request, and his name does not appear on the list (see generally Texas Department of Public Safety Crime Records Service, Sex Offender Database, https://records.txdps.state.tx.us/soSearch/default.cfm (last visited Apr. 28, 2005)).[3]

---

[3]In its rehearing order, the panel finds it irrelevant that the registration requirement was dropped. Surely the panel cannot ignore the jurisdictional requirement that a live controversy exist at all stages of the litigation. See, e.g., United States Parole Comm'n v. Geraghty, 445 U.S. 388, 396-97, 100 S. Ct. 1202, 1208-09 (1980); North Carolina v. Rice, 404 U.S. 244, 246, 97 S. Ct. 402, 404 (1971) ("Even in cases arising in the state courts, the question of mootness is a federal one which a federal court must resolve before it assumes jurisdiction.").

14

Further, the panel overlooked that the state expressly protects the confidentiality of sex therapy records.  See TEX. OCC. CODE §§ 109.051-109.053.  Coleman cannot argue "stigma" on this record.[4]

Equally troubling, the panel relied on "facts" outside those provided the state courts in asserting that Coleman would suffer invasive physical procedures. The only basis for this part of the panel opinion is its judicial notice of a state government website.  The website discusses the use of "multifaceted" sex offender treatment regimes, which may or may not include the more invasive techniques the panel asserted as demonstrated fact.  None of this discussion is probative as to Coleman, who never attended any therapy sessions, never experienced any invasive treatments, and did not and could not submit any evidence in state or federal court about the therapy sessions he would have been expected to attend.[5]  The panel's

---

[4]To be sure, Coleman would have to demonstrate that the requirements stigmatized him beyond his status as a felony convict and as someone convicted of misdemeanor sexual assault of a twelve-year-old, mentally retarded girl.  See supra n.2.

[5]Coleman never presented these "facts" to the state courts or requested judicial notice be taken of the website in state court.  Although the panel is quick to invoke circuit rules to preclude the state from contesting this "fact" in its petition for rehearing, the state had no notice that the website would be cited by the panel. After all, the "facts" for habeas cases are required to be developed in the state courts.  See 28 U.S.C. § 2254(d)(2) (referring to "facts in light of the evidence presented in the state court proceedings"); § 2254(e)(i) (applicant can rebut presumption of correctness of state fact findings by clear and convincing evidence);

15

conclusions about what his particular therapy regime would entail are pure conjecture. Thus, the second factual requirement of <u>Vitek</u> is absent from this record.

To achieve its desired legal result, the panel extended <u>Vitek</u> from the circumstance of inmates' forced mental health treatment to that of forced sex offender registration and therapy. Moreover, the panel further extends the liberty interest created in <u>Vitek</u> from a "stigma-plus" due process decision to something approximating a per se procedural due process rule when, as here, registration was not even required, and invasive physical treatment is mere conjecture. That is, the state is required by this decision to grant pre-deprivation process <u>whether</u> <u>or</u> <u>not</u> the prisoner's sex therapy will be publicized and thus stigmatizing, and <u>whether</u> <u>or</u> <u>not</u> invasive physical treatment of a particular prisoner is actually contemplated. By transforming the <u>Paul v. Davis</u>[6] "stigma-plus" test into "plus=stigma," <u>see</u> <u>Panel Op.</u>

_____

§ 2254(e)(2) (no new hearing allowed to develop facts unless the factual predicate "could not have been discovered through the exercise of due diligence"). Moreover, the state now claims (correctly) that Coleman is not in the sex offender database; as shown <u>supra</u>, brief consultation (equally worthy of judicial notice) of another website verifies this proposition, which supports the state's claim of a <u>jurisdictional</u> defect (<u>see</u> <u>supra</u> note 3).

[6]424 U.S. 693, 701, 96 S. Ct. 1155, 1160-61 (1976) (damage to reputation alone insufficient to invoke procedural due process; loss of reputation must be coupled with some other tangible element to become protectable property interest).

16

on Reh'g, the panel's conception of a "liberty interest" stands current Supreme Court caselaw on its head. It bears repeating that only two years ago the Supreme Court expressly refused to decide whether a sex offender registration law violates a liberty interest. Doe, 538 U.S. at 8, 123 S. Ct. at 1165.[7]

Vitek, moreover, ordered a predeprivation hearing to ascertain the prisoner's mental state before the prisoner may be forcibly institutionalized (with concomitant stigma and invasive treatment). If the panel means to say that Coleman was entitled to initial release to mandatory supervision only after having a hearing concerning the imposition of sex offender conditions, then the facts do not support the panel's ruling. Coleman stipulated to those conditions at the outset of supervised release. See R. 91 ("I, Tony Coleman, acknowledge notification of Sex Offender Program Special Condition and the above components. Failure to abide by the above special condition and the initialed components is a violation of my

---

[7]Moreover, one district court has found that there is nothing atypical or significantly harsh about a prisoner's enduring sex therapy. (These are terms employed by the Supreme Court to explain more clearly the circumstances in which prison conditions could sustain liberty interest analysis. Sandin v. Conner, 515 U.S. 472, 484, 115 S. Ct. 2293, 2300 (1995).) See Jones v. Puckett, 160 F. Supp. 2d 1016, 1023 (W.D. Wisc. 2001) ("Attending sex offender therapy is not atypical and significant compared to ordinary prison life. Prisoners are often required to participate in all types of counseling, not all of which is necessitated by their specific conviction.").

17

conditions of release. I further understand that even if I refuse to sign the form special condition 'X' and the components that apply are still in effect." (signed by Coleman, 4/3/01)); R. 222 (additional signature of Coleman agreeing to sex offender conditions, dated Mar. 23, 2001). He did not make a due process challenge at that time. Having so stipulated in order to gain "release," Coleman is in an odd position now, four years later, when he backs off his agreement.

In these various ways, the panel relied on unproven facts and distortion of <u>Vitek</u> to reach its substantive conclusion. Its methodology also plays havoc with Congress's carefully crafted limitations on federal habeas review. AEDPA authorizes federal courts to overturn only those state court decisions that represent an "unreasonable" application of constitutional law decided by the Supreme Court. An "unreasonable" decision must be not just wrong, but really wrong. <u>See</u> <u>Brown v. Payton</u>, 125 S. Ct. 1432, 1442 (Mar. 22, 2005); <u>Williams v. Taylor</u>, 529 U.S. 362, 410-11, 120 S. Ct. 1495, 1522 (2000). This panel's decision cannot even be squared with the actions of the circuits supporting its constitutional adjudication. In <u>Neal v. Shimoda</u>, a § 1983 case cited favorably by the panel, the Ninth Circuit found that the liberty interest protected by the due process clause was implicated in a similar factual situation. 131 F.3d 818 (9th Cir. 1997). The court went on, however, to sustain the qualified immunity of individual defendants. The qualified

18

immunity ruling is wholly at odds with what the panel <u>had</u> to find in order for

Coleman to prevail under AEDPA. <u>Neal</u> stated:

> <u>No reasonable prison official would have reason to know that</u> the classification of Neal as a sex offender or the requirement that Neal complete the [treatment] as a precondition to parole eligibility <u>would implicate a protected liberty interest, let alone that the program violated his due process rights</u>.

<u>Id.</u> at 832 (emphasis added); <u>see also</u> <u>Chambers v. Colorado Dep't of Corr.</u>, 205

F.3d 1237, 1244 (10th Cir. 2000) (holding, on similar facts, that "[b]ecause the state

of the law was not established when these actions were taken, the prison officials

named in this lawsuit are entitled to qualified immunity").[8]  While the

---

[8]The other circuits' § 1983 decisions also raise a serious question whether the panel properly decided this as a habeas case.  On January 17, 2001, Coleman was released on mandatory supervision on the condition that he reside in a halfway house until reemployed.  "Mandatory supervision" is "the release of an eligible inmate so that the inmate may serve the remainder of the inmate's sentence <u>not on parole</u> but under the supervision of the pardons and paroles division."  TEX. GOV'T CODE § 508.001(5) (VERNON 2004) (emphasis added) (quoted in <u>Panel Op.</u>, __ F.3d __, __ (slip op. at 2 n.1)).  The appropriate avenue for challenging the state's treatment of Coleman appears to be through 42 U.S.C. § 1983, not habeas.  <u>See</u> <u>Wilkinson v. Dotson</u>, 125 S. Ct. 1242, 1250 (Mar. 7, 2005) (Scalia, J., concurring) ("It is one thing to say that permissible habeas relief, as our cases interpret the statute, includes ordering a 'quantum change in the level of custody,' such as release from incarceration to parole.  It is quite another to say that the habeas statute authorizes federal courts to order relief that neither terminates custody, accelerates the future date of release from custody, nor reduces the level of custody. . . . A holding that this sort of judicial immersion in the administration of discretionary parole lies at the 'core of habeas' would utterly sever the writ from its common law roots."); <u>Cook v. Tex. Dep't of Criminal Justice Transitional Planning Dep't</u>, 37

19

AEDPA/Teague standard and the test for qualified immunity are "doctrinally distinct," Williams, 529 U.S. at 380, 120 S. Ct. at 1506 n.12 (Stevens, J.) (plurality opinion), we need not ignore their logical similarity. It is illogical to conclude that no "new rule" is made here when the panel (a) orders Texas prison officials, for the first time, to give hearings to sex offenders who were not explicitly convicted of sex offenses; (b) determines such prisoners are now entitled to hearings even if their sex offender treatment is fully confidential and amounts to "talk therapy"; and (c) the other circuits have agreed, through their qualified immunity conclusions, that Vitek supports but does not necessarily compel similar results.

In sum, the panel's "new rule" was not "dictated by Supreme Court precedent." See Teague, 489 U.S. at 301, 109 S. Ct. at 1070 (a "new rule" is one that "breaks new ground or imposes a new obligation on the States . . . ."). It would be hard for any prisoner procedural due process innovation to be dictated by

F.3d 166, 168 (5th Cir. 1994) (habeas corpus is solely available to challenge the "fact or duration of confinement"); Bunn v. Conley, 309 F.3d 1002, 1008 (7th Cir. 2002) (rejecting an attempt to challenge in habeas a "crime of violence" notification requirement imposed as part of supervised release because the requirement "in no way affects the duration, much less the fact, of confinement"). Notably, four other circuits have addressed issues similar to those posed to this panel in § 1983; none has considered the issue through habeas. See Gunderson v. Hvass, 339 F.3d 639, 642 (8th Cir. 2003); Chambers v. Colorado Dep't of Corr., 205 F.3d 1237, 1239-40 (10th Cir. 2000); Kirby v. Siegelman, 195 F.3d 1285, 1287 (11th Cir. 1999); Neal v. Shimoda, 131 F.3d 818, 824 (9th Cir. 1997).

20

precedent given the inherent balancing involved in due process cases. That the panel's decision was not "dictated" by <u>Vitek</u>, however, is ultimately reinforced by the Supreme Court's refusal, in <u>Doe</u>, <u>supra</u>, to decide whether a liberty interest exists in not being classified as a sex offender.

As a way around its inability to cite "clearly established" Supreme Court caselaw, the panel invokes <u>Yarborough v. Alvarado</u>, __ U.S. __, 124 S. Ct. 2140, 2151 (2004) ("Certain principles are fundamental enough that when new factual permutations arise, the necessity to apply the earlier rule will be beyond doubt.")). <u>See</u> <u>Panel Op.</u> __ F.3d at __ (slip op. at 11 n.30). <u>Yarborough</u> is not on point. Moreover, the Court's dicta were immediately followed by the statement, "This is not such a case, however." <u>Id.</u> Further, Justice Kennedy cited no illustrative caselaw after making this broad statement. <u>Yarborough</u>'s dicta do not eliminate the longstanding rule that habeas is not the avenue through which a federal court may find new constitutional rights. <u>See</u> <u>Teague v. Lane</u>, 489 U.S. 288, 109 S. Ct. 1060 (1989); <u>Williams</u>, 529 U.S. at 379, 120 S. Ct. at 1505-06 (noting that <u>Teague</u> "remains the law" even after AEDPA, and that "[i]t is perfectly clear that AEDPA codifies <u>Teague</u> to the extent that <u>Teague</u> requires federal habeas courts to deny relief that is contingent upon a rule of law not clearly established at the time the state conviction became final").

The only thing more perplexing than the panel's determination on the merits is what happens next — both for Coleman and the state correctional institutions in this circuit. The panel decision is neither fish nor fowl: Coleman "wins" and the district court is reversed, yet Coleman does not secure his release, and the panel does not offer any guidance to the district court as to the appropriate next step. This is without precedent. Should the district court hold a mini-trial? Or should the district court order Coleman "released" back into the halfway house, where he is still in custody under Texas law, until the state convenes yet another hearing and affords Coleman an opportunity to dispute his status and treatment regimen? Compare Vitek, 445 U.S. at 494-96, 100 S. Ct. at 1264-65 (refusing to require states to provide counsel for predeprivation hearings). And what should prison officials do when they want a parolee to obtain counseling for drug abuse, alcoholism, or even depression? Surely stigma may attach to any of these labels, even, apparently, if the treatment is confidential. Must procedural process be afforded?

This opinion extends Vitek beyond recognition and vastly complicates the state's attempts to rehabilitate troubled, as well as predatory, inmates. Equally unfortunate, it does violence to the deference that we owe state courts under AEDPA. The panel crafted a "new rule" of parole procedure where two other

22

circuits, on whose opinions it heavily relied, granted § 1983 qualified immunity precisely because the law on this issue — the pre-parole process owed a sex offender — is not clear, much less "dictated by precedent." This opinion opens the door to other judge-made "new rules" that undermine AEDPA's statutory requirements.

I respectfully dissent.