IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

November 25, 2008

No. 07-60659

Charles R. Fulbruge III
Clerk

LUCILLE TEBO

Plaintiff-Appellant

v.

CARY TEBO; KENNETH TEBO; CHIP DALE HOLBROOK, Medical Doctor;
NADINE BUSH, Medical Doctor

Defendants-Appellees

Appeal from the United States District Court
for the Southern District of Mississippi

Before BENAVIDES, SOUTHWICK, and HAYNES, Circuit Judges.

Leslie H. Southwick, Circuit Judge:

Lucille Tebo appeals the district court's grant of summary judgment. She alleges that the Defendants – her two adult stepsons and two medical doctors who evaluated her – engaged in a conspiracy to have her involuntarily committed for mental treatment. The asserted object of the conspiracy was the taking of her property after she was committed. We AFFIRM.

## I. Background

One evening in May 2003, Cary and Kenneth Tebo ("Tebo brothers") were visiting the farm where their father, Thurman Tebo, lived. Also living there was their stepmother, the Plaintiff Lucille Tebo. After an argument, Mrs. Tebo threw a phone at Cary and threatened to kill him. After the brothers left, she

stayed up pacing and hitting the walls of the room where her husband was in bed. The next morning the brothers called the county sheriff. The sheriff contacted Joan Sonnier, a counselor employed by Region 8 Mental Health Services, which is a state agency. Sonnier, along with the sheriff, went to the Tebo residence so that Sonnier could evaluate Mrs. Tebo. The document Sonnier prepared during the visit is in the form of an affidavit from the husband, Thurman Tebo. Among other details, he stated that his wife "becomes angry, hits walls, takes her husband's medicines, [and] provokes other people."

Once learning of these allegations, Sonnier advised the brothers to file an affidavit at the county courthouse for involuntary civil commitment. In their affidavit, the brothers stated that Mrs. Tebo's problems were "throwing things, pitching fits, not sleeping," and that she was a "danger to self and others." A deputy clerk for the chancery court that had jurisdiction over the proceedings helped the Tebo brothers prepare a patient information form. The form identified a number of alleged problems, including that Mrs. Tebo abused prescription drugs. That allegation is not in the brothers' affidavit.

After the brothers' affidavit was filed on May 15, 2003, Mrs. Tebo was evaluated by Doctors Nadine Bush and Chip Dale Holbrook on May 19. Those doctors are Defendants in this suit. Mrs. Tebo alleges that she felt pressured to attend the evaluations. She worried that she would be committed to the state hospital if she did not attend them. No physical compulsion is alleged. After evaluating her, the doctors filed a report stating that Mrs. Tebo was in need of inpatient psychiatric treatment. In a handwritten section of the report, the two physicians said that she was "having problems with anger, throwing things at husband, threatening to kill him and taking [his] meds."

Either on the day of the evaluation or very soon thereafter, a special master recommended that both Mrs. Tebo and her husband receive treatment. Before the chancellor (trial judge) ruled on the recommendation, the brothers

moved to dismiss the proceedings on June 2, apparently because Mr. and Mrs. Tebo were getting a divorce. The chancellor ordered a dismissal on June 4.

Mrs. Tebo then filed this suit in federal district court. She alleged that the Defendants conspired to violate her right to due process as guaranteed by the Fourteenth Amendment to the Constitution. She sought relief under 42 U.S.C. § 1983. She also presented state-law tort claims for intentional infliction of emotional distress, malicious prosecution, and negligence per se against all four Defendants, and for medical malpractice against the two doctors.

The district court granted summary judgment on all claims against the four Defendants who are appellees now. A settlement as to other parties was reached and an order of dismissal entered. Mrs. Tebo's notice of appeal contested only the judgment in favor of the Tebo brothers and the two doctors.

## II. Analysis

This court reviews a grant of summary judgment de novo. Summary judgment is appropriate if there is no genuine issue of material fact, and if the moving party is entitled to judgment as a matter of law. Morris v. Powell, 449 F.3d 682, 684 (5th Cir. 2006).

### A. Claims Against Cary and Kenneth Tebo

#### 1. Due Process Violation by the Tebo Brothers

Mrs. Tebo alleges that the commitment procedures were not followed and each Defendant is liable. She concedes that the Tebo brothers are not state actors. In order to hold them liable on her Section 1983 claim, they must have engaged in a conspiracy with state actors to violate her constitutional rights. Cinel v. Connick, 15 F.3d 1338, 1343 (5th Cir. 1994). To make such a claim actionable, the private and the public actors must have entered into an agreement to commit an illegal act, and a plaintiff's constitutional rights must have been violated. Id. A plaintiff must "allege specific facts to show an agreement." Priester v. Lowndes County, 354 F.3d 414, 421 (5th Cir. 2004).

The essence of the alleged conspiracy is that the Tebo brothers agreed with Dr. Bush and social worker Joan Sonnier to have Mrs. Tebo "civilly committed without following the civil commitment statutes." According to Mrs. Tebo, the Tebo brothers violated her statutory rights by filing an affidavit containing false statements about her behavior, by falsely claiming they were entitled to pauper status, and by causing an evaluation to be conducted prior to a court's reviewing the affidavit for sufficiency. See Miss. Code Ann. § 41-21-67. Defendants Sonnier (now dismissed), Holbrook, and Bush are alleged to have misled Mrs. Tebo about her status under the civil commitment laws, and to have been part of the conspiracy to evaluate her without a court order.

As we have already summarized, Mrs. Tebo admitted engaging in some erratic behavior. The brothers called the county sheriff. The sheriff contacted Sonnier, and both then went to the Tebo home to conduct what Mrs. Tebo alleges was an illegal "pre-screening evaluation." Thereafter, the brothers followed Sonnier's advice by going to the county courthouse, where they filed the affidavit and signed the pauper's oath. There is no allegation that the brothers were involved in the commitment process after submitting their affidavit. The affidavit led to Mrs. Tebo's evaluation by the doctors. If the evaluation improperly occurred without court order, there is no evidence from which to infer that the brothers were complicit.

Mrs. Tebo's allegation that the Defendants were engaged in a conspiracy to violate her civil rights is conclusory. She offers no evidence of an agreement to commit an illegal act between the Tebo brothers and the state actors. Even had Sonnier's method of proceeding been in violation of state law, there is no evidence that the Tebo brothers, presumably not experts in civil commitment law, were aware of the illegality or that such lawlessness was a component of a scheme to have Mrs. Tebo illegally committed.

4

The same difficulty for the claim applies to the allegedly unlawful means by which Doctors Bush and Holbrook – whom the Tebo brothers never met – evaluated Mrs. Tebo.  Similarly, Mrs. Tebo fails to show how the brothers' own allegedly improper conduct of signing a false pauper's oath and exaggerating her behavior in their affidavits shows that they were acting in agreement with state actors to have Mrs. Tebo illegally committed.  She does not allege that they told Sonnier they were lying or of their supposedly illicit intentions, much less offer evidence of an actual agreement to commit Mrs. Tebo illegally.

Mrs. Tebo's allegations and evidence do not "allege specific facts to show" that there is a genuine issue of material fact as to whether there was "an agreement between the private and public defendants to commit an illegal act." Accordingly, we affirm the grant of summary judgment on this claim.

2. Intentional Infliction of Emotional Distress by the Tebo Brothers

The next claim we will consider is that for intentional infliction of emotional distress.  One description of this tort in Mississippi is this:

> In general, damages for mental anguish or suffering are recoverable when they are the natural or proximate result of an act committed maliciously, intentionally, or with such gross carelessness or recklessness as to show an utter indifference to the consequences when they must have been in the actor's mind.

Lyons v. Zale Jewelry Co., 150 So. 2d 154, 158 (Miss. 1963).  The emotional distress must have been intended or a reasonably foreseeable result of a defendant's act.  Adams v. U.S. Homecrafters, Inc., 744 So. 2d 736, 743 (Miss. 1999).  The tort requires conduct that is "wanton and willful" and that "would evoke outrage or revulsion."  Speed v. Scott, 787 So. 2d 626, 630 (Miss. 2001). The conduct must "go beyond all possible bounds of decency, and . . . be regarded as atrocious, and utterly intolerable in a civilized community."  White v. Walker, 950 F.2d 972, 978 (5th Cir. 1991) (quoting Lyons, 150 So. 2d at 158).

In her amended complaint, Mrs. Tebo alleged that the defendants by entering a conspiracy to "institute, instituting, and continuing an original proceeding with malice and in intentionally inflicting emotional distress on the plaintiff," had committed this tort. That is by far her broadest statement of the claim. Relevant in our review, though, are not her pleadings but her required responses beyond her pleadings to the motion for summary judgment. We will review those to see what remains in issue on this tort.

The first relevant document is Mrs. Tebo's own request for partial summary judgment. There she had a heading for "intentional infliction of emotional distress," but the text of the section that follows only concerns the tort of malicious prosecution. Thus, she did not state anything in that filing concerning this tort. In her pleading responding to the Tebo brothers' summary judgment motion, she used one brief paragraph to address this particular tort. She alleged that Sonnier's "conduct was wanton, willful, malicious, and outrageous," but she said nothing about the Tebo brothers. These filings do not fulfill Mrs. Tebo's obligation to respond to the motion for summary judgment as to these Defendants on this claim. The suit against counselor Sonnier, the one person mentioned in her response, has been settled. Nothing in Mrs. Tebo's summary judgment response satisfies the provision that someone opposing judgment "must – by affidavits or as otherwise provided in this rule – set out specific facts showing a genuine issue for trial." Fed. R. Civ. P. 56(e)(2).

Continuing the lack of focus on this tort, Mrs. Tebo has very little discussion on appeal of intentional infliction of emotional distress. As to the Tebo brothers, she alleged only that they "made a false affidavit to have Mrs. Tebo committed in an effort to take her property." As to the two doctors, she alleged that they never meaningfully examined her, but "in an effort to have her committed," simply wrote a report finding a mental illness and defect.

The fairest reading of the presentation of this tort below and here is that it was an adjunct to the malicious prosecution claim. No factual response was made below to these Defendants' summary judgment evidence on intentional infliction of emotional distress. The one appellate argument that she makes about this tort concerns the allegedly false affidavit presented by the Tebo brothers. That argument does not undermine the judgment on this claim, as the discrepancies between the behavior Mrs. Tebo admitted and the behavior the Tebo brothers alleged are only in some of the details. On this record, we need not reach the question of whether the act of intentionally seeking to commit a person based upon knowingly false allegations in order to take her property could form the basis of an intentional infliction of emotional distress claim.

We affirm summary judgment as to intentional infliction of emotional distress. The tort of malicious prosecution is where Mrs. Tebo has given her factual and legal focus both below and here. We examine that next.

### 3. Malicious Prosecution by the Tebo Brothers

The next claim we examine is that for malicious prosecution, which is an appropriate legal rubric for her claim that the commitment proceedings were brought for improper reasons and through false affidavits. In Mississippi, this tort has six elements: "(1) The institution of a criminal [or civil ] proceeding; (2) by, or at the insistence of, the defendant; (3) the termination of such proceedings in plaintiff's favor; (4) malice in instituting the proceedings; (5) want of probable cause in the institution of the proceedings; (6) the suffering of injury or damage as a result of the prosecution." Parker v. Miss. Game & Fish Comm'n, 555 So. 2d 725, 728 (Miss. 1989); see also Condere Corp. v. Moon, 880 So. 2d 1038, 1042 (Miss. 2004) (each element must be shown by a preponderance of evidence).

Though the parties do not discuss these elements systematically, there appears to be no dispute as to the first three elements. Mrs. Tebo arguably alleges injuries sufficient to raise an issue of material fact as to element six.

Thus, the validity of summary judgment hinges on the existence of a question of material fact as to elements four and five. Because of our conclusion that the Tebo brothers are entitled to judgment as a matter of law due to the probable cause element, we do not examine the question of malice.

The probable cause that must exist "requires a concurrence of an honest belief in the guilt of the person accused and reasonable grounds for such belief." Nassar v. Concordia Rod & Gun Club, Inc., 682 So. 2d 1035, 1042 (Miss. 1996). To understand what this means, we have found the source of the standard to be Harvill v. Tabor, 128 So. 2d 863, 865 (Miss. 1961). Among other authorities, the Harvill court relied on a case that summarized the Restatement definition of the probable cause element in malicious prosecutions:

> One who initiates criminal proceedings against another has probable cause for so doing if he (a) reasonably believes that the person accused has acted or failed to act in a particular manner, and (b)(i) correctly believes that such acts or omissions constitute at common law or under an existing statute the offense charged against the accused, or (ii) mistakenly so believes in reliance on the advice of counsel under the conditions stated in § 666 (effect of advice of counsel).

RESTATEMENT OF TORTS § 662 (1938) (cited in State Life Ins. Co. of Indianapolis, Ind. v. Hardy, 195 So. 708, 713 (Miss. 1940)). Also assisting our understanding is an encyclopedia cited in Harvill that said an "honest and reasonable belief" in guilt, not "the actual state of the case" that had earlier been brought, controlled as to probable cause. 34 AM. JUR. Malicious Prosecution § 49 (1941).

This first articulation of a need for "concurrence" combined a reasonable belief in what factually occurred with the requirement that such acts would be an offense. A later reiteration is that if the person instigating the proceeding "reasonably believed he [had] a good chance of establishing [his case] to the satisfaction of the court or the jury," there was probable cause. Condere, 690 So. 2d at 1195 (quoting W. PROSSER & W. KEETON, THE LAW OF TORTS § 120, at 893

(5th ed. 1984)). Malice is a separate element of the tort. A defendant's motives and desires fit under the element of malice; what a person believed about the validity of the proceedings would be analyzed under probable cause. This understanding is confirmed by recent case law stating that probable cause is largely objective, while malice is subjective:

> In analyzing probable cause and malice, courts look to objective facts as to the former and the subjective state of mind as to the latter. Probable cause is determined from the facts apparent to the observer when prosecution is initiated. When the facts are undisputed, it is the function of the court to determine whether or not probable cause existed. If the facts are in dispute, under our decisions it is a jury question, based upon proper instructions, to determine whether or not probable cause existed. Malice, on the other hand, is a mental state. Its existence may be proved by circumstantial evidence, or the jury may infer malice from the facts of the case.

Nassar, 682 So. 2d at 1043 (quoting Owens v. Kroger Co., 430 So.2d 843, 846 (Miss. 1983)). The Owens language that probable cause is an objective matter may be in some tension with the explanation that probable cause contains both a subjective and an objective component. Id. at 1043. Still, Nassar's quoting of the Owens language at least means that the issue of malice needs to be kept distinct from the probable cause analysis.

We next review the Mississippi case law to determine whether a plaintiff must prove both that a defendant did not actually believe there was probable cause and also that there objectively was none, or whether if either form of probable cause existed, no liability arises. In one case, judgment for the defendant was reversed despite his honest belief that the plaintiff had been the criminal perpetrator, but the court found it not to be a reasonable belief. Concordia, 682 So. 2d at 1045-46. Therefore, a plaintiff shows sufficient absence of probable cause if either the belief or the actuality is missing. Summary

judgment for a defendant is improper unless there is no dispute of material fact that probable cause from both perspectives existed.

"Probable cause," of course, must have a context. The context here is the commencement of proceedings for Mrs. Tebo's evaluation and possible commitment to a mental institution. The Tebo brothers had probable cause if they honestly believed and also had a reasonable basis for believing that facts existed warranting the proceedings that later are challenged. Miss. Rd. Supply Co. v. Zurich-American Ins. Co., 501 So. 2d 412, 414 (Miss. 1987).

This court has sought to elaborate on the meaning of "probable cause." Over two decades ago, we concluded without any precedent from that state yet existing that Mississippi courts would require a lesser degree of certainty from a citizen who initiates civil proceedings than is required of a prosecutor:

> the initiator of private civil proceedings need not have the same degree of certainty as to the relevant facts that is required of a private prosecutor of criminal proceedings. In many cases, civil proceedings, to be effective, must be begun before all the relevant facts can be ascertained to a reasonable degree of certainty.

Armco, Inc. v. Southern Rock, Inc., 778 F. 2d 1134, 1137 (5th Cir. 1985) (quoting RESTATEMENT (SECOND) OF TORTS § 67). No subsequent Mississippi state court precedent has addressed the point, though our opinion was cited favorably by the intermediate state court for another principle. Chapman v. Thornhill, 802 So. 2d 149, 153 (Miss. Ct. App. 2001). The view has also been endorsed by the authors of the relevant chapter of a Mississippi legal encyclopedia. Justin L. Matheny & Christopher R. Shaw, Personal Torts § 9, ENCYCLOPEDIA OF MISSISSIPPI LAW (Jeffrey Jackson & Mary Miller eds., New Topic Serv. 2003).

Though the degree of certainty perhaps can be less in a civil proceeding and still constitute probable cause, what it is that the Defendants must be certain about still needs to be identified. The judicial proceedings that these

Defendants initiated must begin with an affidavit that a person is "in need of treatment" due to her behavior:

> If any person shall be alleged to be in need of treatment, any relative of the person, or any interested person, may make affidavit of that fact . . . . The affidavit must contain factual descriptions of the proposed patient's recent behavior, including a description of the behavior, where it occurred, and over what period of time it occurred. Each factual allegation must be supported by observations of witnesses named in the affidavit. Affidavits shall be stated in behavioral terms and shall not contain judgmental or conclusory statements.

Miss. Code Ann. § 41-21-65. The statute requires affiants to describe behavior and not to state conclusions. Merging the statute with the case law, we summarize that the Tebo brothers must have actually but also reasonably believed that Mrs. Tebo was in need of treatment.

We now turn to the summary judgment evidence from both sides of the dispute. As to whether the Tebo brothers had an honest belief, we have the deposition testimony of Kenneth Tebo that he believed "something wasn't right" with his stepmother, and that his statements on the affidavit were truthful. Cary Tebo was also deposed and stated that the incidents referred to in the affidavit prepared for the commitment proceedings actually occurred, and that on the day before the affidavit was signed, he thought something "was wrong with her." Cary Tebo would not say whether he believed Mrs. Tebo was "mentally ill," but only that this "wasn't the person we used to know."

Mrs. Tebo challenges their evidence in part by saying that the brothers relied in their affidavit that began the proceedings on their father's knowledge rather than on their own knowledge. The brothers witnessed some of the events described, but Mrs. Tebo's staying awake and hitting the walls would have been seen and heard only by their father. However, the Mississippi statute does not require that the affidavit be based only on personal knowledge. It is only necessary for "[e]ach factual allegation to be supported by observations of

11

witnesses named in the affidavit." Miss. Code Ann. § 41-21-65. The clerk's form given to the Tebo brothers to use does not have any prompt in the instructions for noting names of other witnesses whose information may also be included in the affidavit. The Defendants' failure to record that some of the information came from their father is irrelevant on the question of probable cause. Because the state proceedings permit an affidavit to include information from others, the failure to note that some of the details were from their father is simply a technical error that does not undermine the honesty of their belief.

In response, Mrs. Tebo claimed that the Tebo brothers contacted the authorities, communicated with Joan Sonnier, and signed the affidavit "in an attempt to help their father take control of the land and property Mrs. Tebo had purchased and put in her and Thurman's name." She alleged that earlier in the month before the effort to have her committed, she had been hospitalized after becoming unconscious. She informed those treating her that she believed that her family had given her something to cause her to black out, and the reason was that the family was trying to have her committed and then take control of her property. She had no evidence other than her opinion about being drugged. Her deposition referred to evidence from years earlier when she felt pressured by her husband to deed some of the property to the brothers.

Whether such evidence of potentially bad motives creates an inference relevant to probable cause is our question. An absence of probable cause can be a reason to infer the existence of malice. Nassar, 682 So. 2d at 1046. The inference of malice fills a void left by proof that there was no legitimate basis for the proceedings. On the other hand, bad motives can exist simultaneously with a belief in probable cause. An inference of no belief in probable cause, once it is shown that probable cause legally existed, has no void to fill.

There was no evidence that either of the Tebo brothers believed that the behavior they described did not constitute probable cause. Further, Sonnier's

evaluation of Mrs. Tebo before the brothers went to chancery court satisfied the rule that if "a reasonable person would investigate further before instigating a proceeding, the failure to do so is an absence of probable cause." Benjamin v. Hooper Elec. Supply Co., 568 So. 2d 1182, 1191 (Miss. 1990). If a party's opinion is the only evidence that there was no honest belief in probable cause, summary judgment is appropriate. See McClinton v. Delta Pride Catfish, Inc., 792 So. 2d 968, 973 (Miss. 2001). We find nothing else in the present case.

With respect to the objective element of probable cause, Mrs. Tebo's admittedly erratic behavior eliminates a genuine issue of material fact as to whether there were no "reasonable grounds for" the statements in the affidavit and the belief that she was in need of treatment. Nassar, 682 So. 2d at 1042.

There was no dispute of material fact on the issue of probable cause. Summary judgment on the malicious prosecution claim is affirmed.

### 4. Negligence per se

We now examine the claim that liability arises under the negligence per se doctrine. There are four elements to a negligence claim – duty, breach of duty, causation, and injury. Entrican v. Ming, 962 So. 2d 28, 32 (Miss. 2007). A duty and its breach can at times be shown by proof that a statute has been violated. Ill. Cent. Gulf R.R. Co. v. Milward, 902 So. 2d 575, 582 (Miss. 2005).

Mrs. Tebo bases her claim of negligence per se against the brothers on two alleged statutory violations – their filing of a "pauper's affidavit," despite ineligibility to do so, and a violation of the provision that the statements made in an affidavit "be supported by observations of witnesses named in the affidavit." Miss. Code Ann. § 41-21-65.

As to the pauper's affidavit, Mrs. Tebo argues that it must be filed by a guardian. The brothers clearly were not her guardians. However, the statute governing the preparation of mental commitment affidavits provides that "any relative . . . or any interested person" may make and file an affidavit regarding

a person "alleged to be in need of treatment." Id. Another statute, governing proceedings after an affidavit is filed, says that when "a pauper's affidavit is filed by a guardian for commitment of the ward of the guardian, the court shall determine if the ward is a pauper," and, if so, the county shall bear the costs of treatment. Id. § 41-21-67(1). The statute instructs trial judges; whatever implication arises from it regarding private conduct is insubstantial. Mrs. Tebo cites no statute or case law forbidding non-guardians to file pauper's affidavits. Thus, there is no basis on which to find that this statute creates a duty that could be the basis for a negligence per se claim.

Mrs. Tebo's second allegation of a statutory violation is that the brothers based the substance of the affidavit on "hearsay from their father," rather than on their own knowledge as is required by the statute. Neither the form given the brothers at the chancery clerk's office nor their handwritten additions to it refers to the source of the information. A preprinted line says, "I make this affidavit for the reason," and then in handwriting appears "throwing things, pitching fits, not sleeping, danger to self + others." A statute requires this kind of affidavit to give the names of witnesses who observed the events; not required is that the person preparing the affidavit be the witness for everything. Id. § 41-21-65. Mrs. Tebo concedes in her brief that the brothers were present during the episode of erratic behavior to which she has admitted.

The duty that in essence is being claimed is that the brothers should have known of the statute and made additions to the form to comply; having failed to do so, they were negligent per se. We have been presented with no judicial precedent from Mississippi or anywhere else that has applied this negligence doctrine to a failure to comply with court procedural rules, such as for the form of an affidavit to be used to commence a suit. Mistakes in court proceedings that allegedly harm another party are not the basis for later negligence suits but can be the basis for rulings in the suit itself. Intentional or reckless misconduct can

14

support claims for malicious prosecution, abuse of process, or perhaps other actions that provide for damages when there has been an illegitimate use of judicial proceedings. Henry v. First Nat'l Bank of Clarksdale, 444 F.2d 1300, 1310-11 (5th Cir. 1971). There is no basis for a negligence action.

The grant of summary judgment on this claim is affirmed.

B. Claims Against Doctors Bush and Holbrook

Dr. Bush asserts three varieties of immunity and Dr. Holbrook two; they are discussed when relevant to particular claims. Both sides agree that Dr. Bush, a public hospital employee, is a state actor for purposes of Section 1983. Thus, it is not necessary to show that she was engaged in a conspiracy with others in order for her to commit a constitutional violation. Dr. Holbrook's status is less clear, but as the discussion will show, it is immaterial to the outcome here.

1. Due Process Claim Against the Doctors

Mrs. Tebo's basis for asserting a violation of her due process rights to liberty is the so-called "stigma-plus" theory. While "infliction of a stigma on a person's reputation by a state official, without more, does not infringe upon a protected liberty interest," a plaintiff may assert a constitutional violation by alleging a stigma "plus an infringement of some other interest." Blackburn v. City of Marshall, 42 F.3d 925, 936 (5th Cir. 1995). The necessary stigma consists of "concrete, false factual assertions"; infringement occurs if the state "sought to remove or significantly alter a life, liberty, or property interest recognized and protected by state law" or the federal constitution as incorporated against the states. Texas v. Thompson, 70 F.3d 390, 392 (5th Cir. 1995).

Mrs. Tebo must first show that statements by a state actor stigmatized her in some way. While the Defendants, especially Dr. Holbrook, argue that actual commitment to an institution is necessary for a stigma, the precedents they cite simply recognize that actually being committed is a stigma and thus requires

heightened due process. The "stigma" portion of the analysis is concerned with speech from the government about an individual. See Garcia v. City of Albuquerque, 232 F.3d 760, 772 (10th Cir. 2000) (a sufficient stigma is one involving "serious mental illness"). We do not find any inherent bar to the statements made in the doctors' report being considered for stigma purposes.

However, Mrs. Tebo's argument fails to grapple with another aspect of the stigma requirement – the stigma must have been "published" by the government. See Bledsoe v. City of Horn Lake, 449 F.3d 650, 653 (5th Cir. 2006) (an element of the "stigma-plus infringement test" is that "the charges were made public"). Placing a charge in a publicly available file has been held to satisfy the publication requirement, Cannon v. City of W. Palm Beach, 250 F.3d 1299, 1301 (11th Cir. 2001), although mere presence in a file not normally available to the public is insufficient. Hughes v. City of Garland, 204 F.3d 223, 228 (5th Cir. 2000). Mrs. Tebo argues that one of our precedents held that a stigma claim can lie even when it was not shown that records of treatment are subject to public disclosure. See Coleman v. Dretke, 409 F.3d 665 (5th Cir. 2005). The Coleman appeal, however, was a habeas challenge to the imposition of mandatory sex offender treatment at the conclusion of a prisoner's sentence. The court held that even if the state did not publicize the petitioner's status by placing him on the sex offender registry or disclosing records of his treatment, there were "adverse social consequences" that arose from requiring him to attend sex offender therapy; those effects required heightened due process. Id. at 668. Coleman was not applying the Section 1983 stigma-plus test, but rather interpreting the due process standards for commitment of prisoners to mental institutions. See Vitek v. Jones, 445 U.S. 480 (1980).

Mrs. Tebo's only evidence of publication is an affidavit by one witness in the community that she "heard that Thurman Tebo had tried to have Mrs. Tebo committed because she was mentally incompetent." There is no indication that

this information came from the report signed by Doctors Bush and Holbrook, or from anyone else connected to the government. We find no basis to conclude that the publication element is met by evidence of this sort.

Even if there were a stigma, it would not be enough. Mrs. Tebo must also establish that an independent constitutional interest was violated. She must show that she was deprived of a right previously existing under state law or the U.S. Constitution. Paul v. Davis, 424 U.S. 693, 708 (1976). Mrs. Tebo alleges that her right to liberty was violated by the threat of mental commitment. Even though she was not committed, she claims she went to Doctors Bush and Holbrook involuntarily. She asserts that Joan Sonnier told her "she had to go see the two doctors on Monday," and she was "scared the defendants would have her locked up . . . if she did not obey their commands." Mrs. Tebo cites Dr. Holbrook's deposition testimony, in which he testified that Mrs. Tebo told him that "someone else made her come" and "[s]he did not want to be there." Holbrook, in turn, cites Mrs. Tebo's deposition, in which she agreed that the sheriff did not force her to go, that her brother drove her to the doctor, and that her attorney did not tell her not to go.

The cases cited by Mrs. Tebo did not find that a person's liberty interest was violated on facts consisting of nothing more than a sense of being pressured to receive this sort of medical examination. Moreover, Mrs. Tebo does not contest that Doctors Bush and Holbrook had no contact with or knowledge of her before she arrived at their offices for her appointment. Joan Sonnier, who Mrs. Tebo says told her she was required to attend the evaluations, is no longer a party. Mrs. Tebo does not explain how the doctors could have been involved in any such conspiracy. Thus, there is not a genuine issue of material fact as to whether the doctors deprived Mrs. Tebo of a protected liberty interest. Summary judgment on this claim is affirmed.

2. Intentional Infliction of Emotional Distress by the Doctors

17

The standard for an intentional infliction claim has previously been stated. This claim as it relates to the doctors arises from the statements in the report of the psychological evaluation that Mrs. Tebo was mentally ill and required inpatient psychiatric treatment.

While those statements might constitute outrageousness if they were intentionally false, Mrs. Tebo presents no evidence of such intent. Her medical expert created a genuine issue as to whether the doctors' evaluation was negligently conducted and not in conformity with the relevant statutes. We address those claims later. But there is nothing in the record indicating that Bush or Holbrook had any reason to falsify their report or to harm Mrs. Tebo. Mrs. Tebo's speculation as to bad motives, without presenting some evidence that would allow a fact-finder to find intentional or reckless conduct, does not allow the claim of intentional infliction of emotional distress by the doctors to withstand summary judgment. We affirm judgment on this claim.

### 3. Malicious Prosecution

The elements of this tort have already been explained. There is no evidence of malice in instituting or continuing the proceedings. Mrs. Tebo points to no motive or potential bad objective on the part of Doctors Bush and Holbrook. At most, she lays out a negligence claim. Summary judgment as to malicious prosecution is affirmed.

### 4. Negligence per se and Medical Negligence

#### a. Dr. Bush

Mrs. Tebo argues that Dr. Bush violated various provisions of the civil commitment statutes. These violations are said to constitute negligence per se. Questions are also raised concerning whether Dr. Bush was negligent in his medical evaluation of Mrs. Tebo. However, because Dr. Bush is a public employee, issues of immunity control the outcome.

A section of the Mississippi Tort Claims Act provides that "no employee shall be held personally liable for acts or omissions occurring within the course and scope of the employee's duties." Miss. Code Ann. § 11-46-7. Excluded are "fraud, malice, libel, slander or any criminal offense." Id. Mrs. Tebo argues that Dr. Bush is not entitled to this immunity because the doctor "acted willfully and maliciously." As explained with respect to the intentional infliction and malicious prosecution claims, there is not sufficient evidence to raise a genuine issue of material fact that Dr. Bush acted with malice. Moreover, Mrs. Tebo does not dispute that Dr. Bush is subject to this statutory immunity provision and does not explain how an exception for intentional torts could apply to a claim for per se negligence in violating a statute or negligently providing medical care. Dr. Bush is entitled to this statutory immunity.

### b. Dr. Holbrook

Dr. Holbrook does not argue that he is entitled to the immunity for public employees. He cites us to another statute that immunizes actions taken under the civil commitment statutes that were "in good faith in connection with" the "opinions of physicians and psychologists," among other things. Id. § 41-21-105(1). Mrs. Tebo claims that Dr. Holbrook has no immunity because there can be no good faith given her evidence that the statutory procedures were not followed and the medical standard of care was not upheld.

"Good faith" is not defined by the statute. In other contexts, "good faith" has been defined as the "absence of intent to defraud or seek unconscionable advantage." In re Estate of Wheeler, 958 So. 2d 1266, 1273 (Miss. Ct. App. 2007). It has been held that the immunity applies to charges of "wrongful commitment, unlawful detention, battery (based on non-consensual treatment) and the like. It speaks to negligence only insofar as one might deviate from the appropriate standard of care in making the commitment decision." Carrington v. Methodist Med. Ctr., 740 So. 2d 827, 829 (Miss. 1999). It is precisely the making of the

commitment decision that was at issue here – not, as in Carrington, the failure to prevent a suicide occurring after a commitment took place.

Mrs. Tebo accuses Dr. Holbrook of two negligence-based claims; negligence is at the core of what the statute immunizes. Summary judgment is affirmed as to the negligence claims against the doctors.

### III. Conclusion

We AFFIRM the grant of summary judgment with respect to all claims.