# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

No. 13-60530
Summary Calendar

United States Court of Appeals
Fifth Circuit

**FILED**

May 2, 2014

Lyle W. Cayce
Clerk

RISA PITTMAN,

Plaintiff-Appellant

v.

BOYD BILOXI, L.L.C.,

Defendant-Appellee

Appeal from the United States District Court
for the Southern District of Mississippi
USDC No. 1:12-CV-64

Before REAVLEY, JONES, and PRADO, Circuit Judges.

PER CURIAM:*

Plaintiff-Appellant Risa Pittman appeals from the district court's grant of summary judgment in favor of Defendant-Appellee Boyd Biloxi, L.L.C., which is the operator of the IP Casino in Biloxi, Mississippi. Reviewing the record de novo, *see Bell v. Thornburg*, 738 F.3d 696, 698-99 (5th Cir. 2013), we AFFIRM.

---

* Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 13-60530

Pittman has a documented history of intoxication and unruly behavior toward security personnel and other patrons at the IP Casino. Following an incident in September 2010, Pittman was prohibited from coming to the casino, her "elite player" account was "flagged" so that she would not receive promotional materials, and her name was placed on the banned list. Although the ban was subsequently lifted at Pittman's request, the record shows that Pittman's account at the casino initially remained flagged. The casino subsequently "unflagged" the account, but her name was not removed from a separate banned list used by casino security. On October 23, 2011, at approximately 4:30 a.m., Security Officers Adam Baskind and Marcus Odom observed Pittman gambling in the casino. After discovering that Pittman's name was still on the banned list, Baskind and Odom confronted her. It is disputed whether the officers asked Pittman to leave the casino. What is not disputed is that Odom contacted the Biloxi police, and Pittman was arrested for trespassing. A Municipal Court judge found Pittman not guilty. Pittman then filed the instant suit based on diversity jurisdiction.

On appeal, Pittman advances claims for malicious prosecution, false imprisonment, abuse of process, and intentional infliction of emotional distress. A claim for malicious prosecution in Mississippi requires the plaintiff to prove the following: (1) the institution of a criminal or civil proceeding (2) by the defendant; (3) a termination in plaintiff's favor; (4) malice by the defendant; (5) want of probable cause for the proceeding; and (6) injury or damages resulting from the prosecution. *See Tebo v. Tebo*, 550 F.3d 492, 498 (5th Cir. 2008). We agree with the district court that Pittman has failed to show malice or a lack of probable cause.

Malice requires a showing that "the primary purpose of prosecuting is one other than bringing an offender to justice." *Hudson v. Palmer*, 977 So. 2d 369, 381 (Miss. Ct. App. 2007) (internal quotation marks and citation omitted).

2

No. 13-60530

Probable cause, which is determined from all the facts apparent at the time the prosecution is instituted, requires "a concurrence of (1) an honest belief in the guilt of the person accused and (2) reasonable grounds for such belief." *Van v. Grand Casinos of Miss., Inc.*, 767 So. 2d 1014, 1020 (Miss. 2000); *see Benjamin v. Hooper Elec. Supply Co.*, 568 So. 2d 1182, 1190 (Miss. 1990). If probable cause existed for the initiation of criminal proceedings, a claim for malicious prosecution must fail. *Van*, 767 So. 2d at 1019-20.

Although malice and probable cause are separate elements of the cause of action, they are closely related in this case because the evidence shows that Pittman was prosecuted for trespass based on a reasonable belief by security personnel that she was banned from the casino.

The evidence was that the casino "flags" the accounts of banned persons, such as Pittman, who have "players accounts" and places those persons' names on an Excel spreadsheet. When a person's status is questioned, security officers refer to the spreadsheet. Security Officer Odom testified, and there is no evidence to the contrary, that Pittman's name was still on the banned list at the time of the October 2011 incident even though she had received a letter from the casino granting her permission to return. Indeed, a November 2010 email from host Herb Dotson stated that although the ban had been lifted, Pittman's account was still showing as "86'd" and still indicated that security should be contacted if she returned to the property. Although Pittman's account was then "unflagged," the email supports Odom's testimony that the casino's records showed Pittman as still being banned. Odom had probable cause to believe Pittman was still banned and to have her removed.

Pittman insists that malice may be inferred because she was involved in a previous incident with Odom, who was therefore motivated by revenge to have her arrested. She argues that Odom did not care whether her ban had

been lifted, and that rather than ask her to leave the casino, Odom told her she was going to jail and immediately contacted police.

The earlier incident to which Pittman refers occurred over one year before the incident in question in this case, and Pittman does not explain why the earlier incident would motivate Odom for revenge. It is purely speculative to argue that Odom was still motivated by that unrelated and remote incident. *See Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc) (summary judgment may not be defeated based on speculation). Moreover, in addition to admitting in her testimony that the casino could have simply made a mistake, Pittman admitted that Officer Baskind was polite and professional toward her and that Odom did not yell or threaten her in any way. This is inconsistent with Pittman's revenge theory, and her subjective belief about the motivation of Odom or other casino personnel does not show malice.

Although Pittman also insists that she never refused to leave the casino, contemporaneous documents, including the casino's internal incident reports and the police report, reflect that she was asked and refused to leave. Pittman argues that her gambling companion, Michelle Walker, testified that Odom threatened Pittman with immediate arrest. Walker later testified, however, that she did not hear anyone tell Pittman she was going to jail before she was arrested. In any event, whether or not Pittman refused to leave does not change the fact that her name was on the banned the list, and therefore the casino had probable cause for its action.

Pittman's real complaint is that Odom and Baskind should have done more to discover that she was no longer banned from the casino, such as checking other records or calling her casino host. Given the circumstances, namely the lateness of the hour at 4:30 a.m., Pittman's history of multiple incidents of abusive behavior, and Pittman's prior banishment from the casino, security personnel acted reasonably by checking the security list to discern

Pittman's status.  Even if they could have done more, their failure to do so was negligence at most. *See Tebo*, 550 F.3d at 505; *cf. Guy v. Commonwealth Ins. Co.*, 894 F.2d 1407, 1413 (5th Cir. 1990) (stating under Mississippi law that a negligent denial of a claim is insufficient to establish malice, gross negligence, or reckless disregard of insured's rights).  The district court did not err by granting summary judgment as to the malicious prosecution claim.

For similar reasons, Pittman's claims for false arrest and abuse of process also fail.  A claim for false arrest requires a showing that the plaintiff was detained by the defendant and that the detention was unlawful. *See Alpha Gulf Coast, Inc. v. Jackson*, 801 So. 2d 709, 720 (Miss. 2001).  "A defendant will not be liable if he resorts to the court to prosecute a person for violation of the law if the proceeding is undergirded by probable cause." *Robinson v. Hill City Oil Co.,* 2 So. 3d 661, 667 (Miss. Ct. App. 2008).  Because Pittman was arrested and detained pursuant to probable cause, her claim fails.

Pittman claims that she was falsely imprisoned not only by the police but also by the defendant because Odom would not allow her to leave the casino and return to her room.  She relies on supporting testimony from Michelle Walker.  Her argument is not convincing, however.  The unlawfulness of a detention "is determined by evaluating whether, looking at the totality of the circumstances, the actions of the Defendant were objectively reasonable in their nature, purpose, extent and duration." *Alpha Gulf Coast*, 801 So. 2d at 720 (internal quotation marks and citation omitted).  Here, Pittman has consistently maintained that Odom called the police right away and that the officers arrived within minutes of her being confronted by Baskind.  Under Pittman's own argument, any questioning by security before police intervention was minimal.  Pittman expressly testified that Baskind was professional and polite and that Odom never touched her, yelled at her, or threatened her in any way.  Pittman fails to show that the brief questioning of

her by security personnel before police arrived when her name was present on a list of persons banned from the casino constitutes false imprisonment. *Cf. Thornhill v. Wilson*, 504 So. 2d 1205, 1208 (Miss. 1987).

"An abuse of process claim requires the plaintiff show (1) the defendant made an illegal use of a legal process, (2) the defendant had an ulterior motive, and (3) damage resulted from the perverted use of process." *Hudson*, 977 So. 2d at 381. "An action for abuse of process differs from an action for malicious prosecution in that the latter is concerned with maliciously causing process to issue, while the former is concerned with the improper use of process after it has been issued." *State ex rel. Foster v. Turner*, 319 So. 2d 233, 236 (Miss. 1975). In support of her abuse of process claim, Pittman merely restates the same arguments she made in support of her malicious prosecution claim, i.e. that she was arrested without probable cause, that Odom should have searched further for proof that she was not banned, and that Odom was motivated by revenge to have her arrested. Pittman fails to show that the defendant used the process other than as intended after it issued, and her claim for abuse of process therefore fails. *See id.*; *see also Brabham v. O'Reilly Auto., Inc.*, 274 F. App'x 373, 377 (5th Cir. 2008).

Finally, Pittman argues that the casino's actions in causing her to be arrested for trespassing give rise to a claim for intentional infliction of emotional distress. We agree with the district court, however, that the circumstances here, including Pittman's testimony that the security officers were polite and professional, do not rise to the level necessary for her claim. Although Pittman's mistaken arrest was no doubt unpleasant, the defendant's actions do not evoke outrage or revulsion so extreme "'as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community.'" *White v. Walker*, 950 F.2d 972, 978 (5th Cir. 1991) (quoting Restatement (Second) of Torts § 46 cmt. d (1965)).

No. 13-60530

AFFIRMED.