F I L E D
United States Court of Appeals
Tenth Circuit

MAR 7 2000

PATRICK FISHER
Clerk

PUBLISH

UNITED STATES COURT OF APPEALS

TENTH CIRCUIT

JOHN H. CHAMBERS,

       Plaintiff-Appellant,

v.

COLORADO DEPARTMENT OF
CORRECTIONS; MARGARET HEIL, in
her Individual and Official Capacity,

       Defendants-Appellees.

No. 97-1023

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
(D.C. No. 95-Z-2028)

OPINION ON REMAND

Richard Byron Peddie and Catherine A. Hance, Frascona, Joiner & Goodman, P.C.,
Boulder, CO, for Plaintiff-Appellant.

Ken Salazar, Attorney General, and Paul S. Sanzo, First Assistant Attorney General,
Denver, CO, for Defendants-Appellees.

Before **HENRY**, **HOLLOWAY**, and **PORFILIO**, Circuit Judges.

**PORFILIO**, Senior Circuit Judge.

The questions presented here are whether the Colorado Department of Corrections' Sex Offender Component classifying John H. Chambers a sex offender and requiring his participation in the Sexual Offender Treatment Program (SOTP) violates the Ex Post Facto Clause and implicates a liberty interest under the Due Process Clause of the Fourteenth Amendment. We affirm, in part, and reverse, in part.

Mr. Chambers, an inmate in the custody of the Colorado Department of Corrections (CDOC), began serving a thirty-nine year sentence for aggravated robbery and attempted theft in 1985.[1] In 1987, CDOC Health Services classified Mr. Chambers as a Sexual Offender, S-2, [Exh. 9], based on the Sex Offender Component of its Risk Assessment Management Program (RAMP) then in effect.[2] [Exh. 8]. The program targeted its mission "to identify and provide specialized supervision and treatment for high-risk assaultive offenders." Noting the high rate of recidivism of the sex offender population, the program sought to "identify, track, treat and supervise sex offenders in order to reduce risk to the community." The program categorized sex offenders based on

---

[1]We have previously set forth some of the procedural and factual history, *Chambers v. Colorado Dep't of Corrections*, 166 F.3d 1220 (10th Cir. 1999) (unpublished) (*Chambers III*).

[2]The Sex Offender Component was part of CDOC Administrative Regulation (A/R) 600-1 promulgated in 1985 by the CDOC for the classification of inmates.

their criminal history. The S-2 sex offender "committed a sex offense but was not convicted of a sex offense charge."[3]

Despite Mr. Chambers' S-2 classification, CDOC did not commence its prescribed sex offender treatment at that time. That treatment, including participation in group therapy, is conditioned upon the inmate's admitting he committed a sex offense; stating he has a problem in this area; and demonstrating his willingness to work on the problem. Instead, according to CDOC Progress Assessment Summary sheets, Mr. Chambers completed his GED, a basic and advanced welding class, a basic mental health program, was assigned as a law librarian in 1991, and was "report free, and definitely not considered a management problem."[4] Presumably based on this conduct, Mr. Chambers continued to receive good time and earned time credits totaling ten days a month.

In 1992, however, Ms. Phyllis Bachicha, a CDOC case manager, reviewed the file and discovered a police report indicating that in 1983, the year before his present sentence of conviction, Aurora, Colorado police arrested Mr. Chambers and charged him with first degree sexual assault. The report included the victim's account of the alleged rape and sodomy and Mr. Chambers' contrasting story. Statements from both the victim and Mr. Chambers converged only upon the facts the two were living together for perhaps a

---

[3]S-1 is an inmate convicted of a sex offense charge; and S-3 inmates "exhibited sex offense behavior while incarcerated."

[4]The reports also noted, however, Mr. Chambers was ineligible for SOTP because he refused to acknowledge his problems in this area.

month and had been drinking on the night of the alleged assault. Mr. Chambers insisted the sex was consensual, and the police evidently were unable to establish otherwise. Although the hospital report listed multiple bruises the victim sustained, police were unable to confirm details of the assault she described.[5] The police report noted detectives advised the victim that she would have to testify in a trial to the court and "it would be brought out during trial that she had been living with the victim [sic] and that she had had intercourse with him before. Victim became upset and stated that if that were the case, that she would drop the charges." [Exh. 3]. The victim then wrote and signed a statement to that effect.[6]

At oral argument before this panel, the State acknowledged its decision to pursue treatment under the program for Mr. Chambers was based on the victim's affidavit. Following Ms. Bachicha's review, Mr. Chambers submitted another questionnaire denying his alleged sexually assaultive behavior, thus signifying his "ineligibility" to participate in the program.[7] Because Mr. Chambers did not participate in the program,

---

[5]For example, the victim told the police Mr. Chambers tied her to the bed although the bed she pointed out had no posts or other railings. The victim then stated she did not remember because it was dark.

[6]The affidavit stated, "I'm dropping charge because I feel I have no chance to win this case in court. His lawyer would make him look innocent & me be the dog which he is the one. If you let him back on the streets there will be another victim."

[7]In 1989, an SOTP case manager interviewed Mr. Chambers and denied his eligibility to participate in the program because he denied having committed a sexual assault. [Exh.12]. In 1991, Gloria Green, another case manager, submitted an individual

(continued...)

Ms. Bachicha recommended reducing the monthly ten days of earned time credit he received to seven days.

This three-day reduction based on his refusal to accept the classification of sex offender triggered the series of lawsuits Mr. Chambers then filed. As we noted in *Chambers III*, in his first federal lawsuit, Mr. Chambers, *pro se*, alleged the loss of earned time credits based on the classification violated his right to due process and equal protection and privilege against self-incrimination. We affirmed that dismissal upon finding earned time credits were a matter of discretion and could not support a constitutional claim. *Chambers v. Bachicha*, 39 F.3d 1191 (10th Cir. 1994) (unpublished). In his second suit, the Colorado Court of Appeals affirmed the dismissal based on *res judicata* of his state suit for declaratory relief seeking restoration of his earned time credits based on the classification. *Chambers v. Colorado Dept. of Corrections*, No. 95CA1248 (Colo. Ct. App. Apr. 18, 1996). Returning to federal court again *pro se*, Mr. Chambers filed the lawsuit underlying our second review here challenging his classification as a sexual offender in violation of due process and equal protection. On cross-motions for summary judgment, the district court held the action

---

[7](...continued)
contact report on Mr. Chambers, stating the SOTP team "examined police reports which clearly describes [sic] a sexual assault. We continue to recommend SOTP for him & that earned time be withheld for not being involved." [Exh. 14]. Ms. Green also recommended moving Mr. Chambers from Fremont Correctional Facility, a medium security facility, to another prison to make room for those eligible to participate in the SOTP.

was not barred by *res judicata* because the challenge to the classification itself had not been previously raised. However, the court granted the CDOC's motion for summary judgment on the claims of the violation of Mr. Chambers' equal protection, due process, and *ex post facto* rights. The CDOC did not cross-appeal that conclusion, the district court having rejected each of the attendant constitutional claims.

In his appeal of that judgment, we appointed counsel to address the constitutionality of Colorado's Sex Offender Treatment Program, Colo. Rev. Stat. § 16-11.7-101 et seq., effective 1992 (the Act), believing that was the operative authority challenged in Mr. Chambers' *pro se* brief. Our focus was sharpened by *Neal v. Shimoda*, 131 F.3d 818 (9th Cir. 1997).

With this direction, appointed counsel contended the Act violated the Ex Post Facto Clause because it, in fact, imposed punishment in the guise of treatment by reducing the amount of earned time credit Mr. Chambers received, thereby lengthening his sentence. Further, the Act violated due process, counsel argued, because this highly stigmatizing label worked an atypical deprivation of Mr. Chambers' liberty interest. The CDOC responded that even though the action was barred by *res judicata*, the Constitution did not provide a right to any particular prison classification. The CDOC distinguished *Neal v. Shimoda* on the ground the Hawaii Sexual Offender Treatment Program conditioned eligibility for parole on the inmate's being labeled a sex offender and

participating in the treatment program.  In contrast, the CDOC argued, Mr. Chambers "lost nothing to which he ever had an entitlement."

However, during oral argument, the CDOC told the panel the Act did not even apply to Mr. Chambers' case.  Instead, his classification was premised on internal CDOC policy which is not limited to inmates convicted of sex offenses.  After further confusion over whether Mr. Chambers was prevented from receiving earned time credits or simply had his earned time credits reduced and which earned time credit statute applied, the panel remanded the case for the district court to conduct an evidentiary hearing aimed at clarifying the factual and legal predicates of the issues.  ***Chambers III***.

The joint stipulation of facts and exhibits filed in the district court provides the following clarification.  As factual support for the classification, the police report, victim's affidavit, and reference to the 1983 sexual assault in the presentence report filed for Mr. Chambers' present incarceration comprised the evidence upon which the CDOC's SOTP team had relied since 1987.  Mr. Chambers was classified an S-2 based on the 1987 Sex Offender Component of the RAMP, A/R 600-1.  However, the same regulation and criteria are applied to inmates covered by the ACT, and the treatment programs are consolidated.  In 1989, when RAMP created five risk categories, S-1 through S-5, incorporated in Regulation 700-19, Mr. Chambers' S-2 classification became S-4.[8]  Mr.

_____

[8]Administrative Regulation 700-19 at 2, Article IV(A), [Exh. 10], identifies S-4 as "[i]ndividuals whose history indicates sexual assaults or deviance for which they may not have been convicted.  These cases often involve plea bargains where the factual basis of
(continued...)

Chambers has never admitted to or been convicted of any sex offense although, the parties stipulated, "[t]here are convicted sex offenders who do not participate in SOTP and who nevertheless receive the maximum awardable earned time credits."[9] If Mr. Chambers "admitted liability" and complied with SOTP even if he could not participate, "he would receive an additional 3 days of earned time credits each month." Mr. Chambers filed a grievance contesting his S-4 classification, but CDOC personnel rejected it in each of the three steps of the grievance procedure. Additionally, the parties stipulated until June 7, 1990, Colo. Rev. Stat. § 17-22.5-302 governed the calculation and award of Mr. Chambers' earned time credits. Presently, Colo. Rev. Stat. § 17-22.5-405 applies.[10]

---

[8](...continued)
the crime involved a sex offense. This category also includes misdemeanor convictions and juvenile convictions for sex offenses." The parties agreed, "On one or more occasions, one or more of his case managers have erroneously listed him as S-5 [individuals with past or current felony sexual offense convictions] although his correct classification is S-4."

[9]CDOC maintains, and Mr. Chambers does not disagree, that participation in an SOTP depends on availability of the program at the particular prison facility as well as size limitations and the time remaining in the inmate's parole eligibility date. Presumably, then, the SOTP may be satisfied simply by the inmate's admission he is a sex offender.

[10]Colo. Rev. Stat. § 17-22.5-405(1) states:

Earned time, not to exceed ten days for each month of incarceration or parole, may be deducted from the inmate's sentence upon a demonstration to the department by the inmate, which is certified by the inmate's case manager or parole officer, that he has made consistent progress in the

(continued...)

Thus, though not originally classified under the Act, the terms of Mr. Chambers' treatment including the requirement for his admission to being a sex offender are now merged into those of the Act. Further, though the same factual predicates for classifying him a sex offender have existed since he was first so labeled, only in 1992 were earned time credits taken away as a consequence of the label. Hence, the focus becomes whether what was taken away as a consequence of the label is simply a privilege, as the CDOC maintains, or something of value. Under the former view, the action is a matter of discretion insulated from constitutional scrutiny; under the latter, Mr. Chambers may have a liberty interest in his earned time credits which cannot be arbitrarily taken away without some procedural safeguards. More importantly, because the key to receiving the "privilege" is acceptance of a highly stigmatizing label under the circumstances of this case, we must subject the CDOC's explanation to careful scrutiny.

Nonetheless, the CDOC asks us to view this picture through a highly discretionary lens and cast its determination outside the perimeter of judicial review. It would insulate decisions about classification, placement, and earned time entirely from due process protections.[11] The CDOC asserts the Constitution is not "a micromanager of day-to-day

---

[10](...continued)
following categories:

    . . . .

(C) Participation in counseling sessions . . . .

[11]Each of the CDOC's citations to authority for this proposition is slightly off the mark, however.

prison activities, and a guarantee of prisoner preferences over those of prison officials," quoting *Handy v. Price*, 996 F.2d 1064, 1068 (10th Cir. 1993), in which an inmate complained about CDOC's treatment of his knee injury and hepatitis. Further, based on *Neal*, the CDOC contends the classification without any coercive consequence does not amount to the "stigma plus" the Court required in *Sandin v. Conner*, 515 U.S. 472, 479 n.4 (1995), to implicate a liberty interest. It insists Mr. Chambers, even without his participation in the SOTP, will not be held beyond his sentence or denied his statutory right to appear before the Parole Board on his parole eligibility date.

We review the grant of summary judgment *de novo*, applying the same standard as did the district court. *McKnight v. Kimberly Clark Corp.*, 149 F.3d 1125, 1128 (10th Cir. 1998). Summary judgment is then appropriate if, after reviewing all of the evidence submitted in the light most favorable to the non-movant, no genuine issue of material fact survives to merit a trial. *UMLIC-Nine Corp. v. Lipan Springs Dev. Corp.*, 168 F.3d 1173, 1176 (10th Cir. 1999); Fed. R. Civ. P. 56(c).

Mr. Chambers contends by reducing the number of earned time credits he receives, his parole eligibility date is not advanced as rapidly as before. The consequence is tantamount to lengthening the sentence he must serve. The SOTP, thus, increases his punishment and violates the Ex Post Facto Clause of the Constitution, he argues.

"[T]he constitutional prohibition on *ex post facto* laws applies only to penal statutes which disadvantage the offender affected by them." *Collins v. Youngblood*, 497

- 10 -

U.S. 37, 41 (1990). To do so, the law must be retrospective, applying to events which occurred before its enactment; and it must disadvantage the individual, by "altering the definition of criminal conduct or increasing the punishment for the crime." *Fultz v. Embry*, 158 F.3d 1101, 1102 (10th Cir. 1998), quoting *Lynce v. Mathis*, 519 U.S. 433 (1997).

Mr. Chambers can show no facts to support his *ex post facto* claim. Application of the SOTP to him has not increased his punishment for he possesses no vested right in a particular parole date or parole hearing eligibility date. In Mr. Chambers' case, the SOTP does not criminalize conduct that was legal before its passage. Further, in rehabilitative matters, prison officials may consider any history established in the inmate's record which it may determine requires treatment. Thus, because application of the SOTP "did not affect the legal consequences of [his] crime or increase his punishment," there is no *ex post facto* violation. *Fristoe v. Thompson*, 144 F.3d 627, 630 (10th Cir. 1998). We therefore affirm the district court's granting summary judgment.[12]

"The Due Process Clause guarantees due process only when a person is to be deprived of life, liberty, or property." *Templeman v. Gunter*, 16 F.3d 367, 369 (10th Cir. 1994). Finding such a violation in the prison setting is particularly daunting. However, although an inmate's "rights may be diminished by the needs and exigencies of the

---

[12]We also affirm summarily the grant of summary judgment on the denial of Mr. Chambers' equal protection claim, no factual allegations or supporting authority giving any merit to this argument.

institutional environment, a prisoner is not wholly stripped of constitutional protections when he is imprisoned for crime. There is no iron curtain drawn between the Constitution and the prisons of this country." *Wolff v. McDonnell*, 418 U.S. 539, 555-56 (1974).

The Supreme Court has recognized a prisoner may be deprived of a liberty interest based on a severe change in the conditions of confinement. "These interests will be generally limited to freedom from restraint which, while not exceeding the sentence in such an unexpected manner as to give rise to protection by the Due Process Clause of its own force nonetheless imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin*, 515 U.S. at 483 (citations omitted). It has also found a liberty interest may be implicated when State laws and prison regulations grant inmates liberty interests to which due process protections apply. *Meachum v. Fano,* 427 U.S. 215, 223-27 (1976). "In the first situation, the liberty interest exists apart from the state; in the second, the liberty interest is created by the state." *Kirby v. Siegelman*, 195 F.3d 1285, 1291 (11th Cir. 1999).

Under the circumstances here, although the CDOC has not created a liberty interest in a prisoner's not being classified a sex offender, it has through its administrative policy applied the SOTP to Mr. Chambers in such a way as to permit him to continue to receive the benefit of the maximum amount of earned time credit. That is, after five years of being labeled a sex offender without Mr. Chambers' admitting that status and with his receiving ten days of earned time credits a month, the CDOC has removed the "benefit" it

consistently awarded with the label.  The removal of that benefit then implicates Mr.

Chambers' liberty interest in not being labeled a sex offender.  And, it is the label replete

with inchoate stigmatization – here based on bare allegations which are vigorously denied

and which have never been tested – which requires some procedural scrutiny.[13]  The

consequences of that label, then, are not a privilege as the CDOC insists, but something

of value entitled to procedural due process.

*Neal v. Shimoda*, 131 F.3d at 818, provides some parallels for our analysis.  The

Hawaii SOTP challenged in that case is virtually identical to the SOTP here except that

eligibility for parole is conditioned on participation in the program.  Inmate Neal was

indicted for robbery, kidnapping, three counts of sexual assault in the first degree, as well

as other charges.  He subsequently entered into a plea agreement in which the sex offense

charges were dismissed.  Hawaii corrections officials reviewed the indictment and

presentence investigation report and classified Neal as a sex offender.  Neal challenged

the SOTP under 42 U.S.C. § 1983 on *ex post facto* and due process grounds.[14]

---

[13]We would note the Colorado legislature, like many other state legislatures, is considering enacting a "Megan's law," requiring sex offenders to register with law enforcement officials.  The CDOC has already stated that for a period of time, Mr. Chambers was incorrectly labeled an S-5, a convicted sex offender.  Given the emotional climate generated by the issue, the possibilities for mischaracterization and mischief are always present when such a label is affixed.

[14]The second plaintiff in that action was convicted of kidnapping and attempted rape, a status which led the Ninth Circuit to find he had "received all of the process to which he was due."  *Neal v. Shimoda*, 131 F.3d 818, 831 (9th Cir. 1997).

- 13 -

The Ninth Circuit concluded there was no *ex post facto* violation because the "Supreme Court has held that such mandatory treatment programs following an inmate's classification as a sex offender based on conduct which occurred prior to the program's beginning do not violate the Ex Post Facto Clause." *Id.* at 827, relying on *Kansas v. Hendricks*, 521 U.S. 346 (1997). However, it held the stigmatizing consequences of the sex offender label coupled with the mandatory treatment program as preconditions for parole eligibility "create the kind of deprivations of liberty that require procedural protections." 131 F.3d at 831. The holding relied on *Vitek v. Jones*, 445 U.S. 480, 493 (1980) (Fourteenth Amendment's Due Process Clause entitles a prisoner to certain procedural protections before his involuntary transfer to a state mental hospital); and *Sandin*, 515 U.S. at 472 (inmate's discipline in segregated confinement does not present the type of atypical, significant deprivation in which a state might create a liberty interest).[15]

To the Ninth Circuit, "the substantive predicate is the labeling of the targeted inmate as a sex offender. Once that is done, it is *mandatory* that the labeled inmate successfully complete the specified treatment program in order to become eligible for parole." 131 F.3d at 830 (italics in original). In *Kirby v. Siegelman*, 195 F.3d at 1291,

---

[15]The Ninth Circuit rejected the state's suggestion *Kentucky Dep't of Corrections v. Thompson*, 490 U.S. 454 (1989) (prison visitation regulations do not establish a liberty interest), supplanted *Vitek v. Jones*, 445 U.S. 480 (1980), and believed its analysis was supportable under both cases. 131 F. 3d at 829.

the Eleventh Circuit also concluded an inmate who has not been convicted of a sex offense has "a liberty interest in not being branded a sex offender." Under the circumstances here, too, it is the mandatory assignment of the label which forms the substantive predicate. According to the CDOC's stipulations, it has no discretion in applying the label; however, it has whatever discretion it chooses in deciding what conduct satisfies the consequences of the label.

The CDOC thus provided Mr. Chambers a liberty interest in the consequences of the *mandatory* label which it then arbitrarily removed without affording him any opportunity to a hearing to challenge the label. We think those consequences are a benefit which cannot be taken away without some process.[16]

We therefore reverse the district court's granting summary judgment and order entry of summary judgment for Mr. Chambers on his claim for injunctive relief, enjoining the CDOC from withholding earned time credit because he refuses to admit to being a sex offender. Because the state of the law was not established when these actions were taken, the prison officials named in this lawsuit are entitled to qualified immunity. Thus, Mr. Chambers' claim for damages cannot be sustained. *Neal v. Shimoda*, 131 F.3d at 832.

---

[16]This conclusion is not contrary to *Templeman v. Gunter*, 16 F.3d 367 (10th Cir. 1994). In that case, CDOC officials had discretion to place the inmate in administrative segregation based on a history of escapes, extreme violence, and other conduct. "Once there, Templeman did not meet the criteria for receiving earned time." *Id.* at 370. The case does not stand for the broad proposition, as the CDOC offers, that a liberty interest can never attach to earned time credits.

**AFFIRMED**, in part and **REVERSED,** in part.