24CA1570 Jimenez v 4th Judicial District 11-26-2025

COLORADO COURT OF APPEALS

Court of Appeals No. 24CA1570
El Paso County District Court No. 24CV224
Honorable David A. Gilbert, Judge

Anthony L. Jimenez, Sr.,

Plaintiff-Appellant,

v.

Fourth Judicial District Probation Department, Executive Director of the
Colorado Department of Corrections, and the Executive Director of the
Colorado Department of Public Safety,

Defendants-Appellees.

_____

JUDGMENT AFFIRMED

Division VII
Opinion by JUDGE TOW
Lum and Moultrie, JJ., concur

**NOT PUBLISHED PURSUANT TO C.A.R. 35(e)**
Announced November 26, 2025

_____

Anthony L. Jimenez, Sr., Pro Se

Philip J. Weiser, Attorney General, Lily E. Nierenberg, Senior Assistant
Attorney General, Denver, Colorado, for Defendant-Appellee Fourth Judicial
District Probation Department

Philip J. Weiser, Attorney General, Ann Stanton, Assistant Attorney General,
Denver, Colorado, for Defendants-Appellees Executive Director of the Colorado
Department of Corrections, and the Executive Director of the Colorado
Department of Public Safety

¶ 1     Plaintiff, Anthony L. Jimenez, Sr., appeals the district court's judgment dismissing his complaint against defendants, the Fourth Judicial District Probation Department, Executive Director of the Colorado Department of Corrections, and the Executive Director of the Colorado Department of Public Safety (collectively, the State Agencies).  We affirm the judgment.

I.     Background

¶ 2     In 2000, the People charged Jimenez with first degree murder, kidnapping, sexual assault, and conspiracy in Teller County Case No. 00CR178.  *People v. Jimenez*, 217 P.3d 841, 849 (Colo. App. 2008).  The charges were based on Jimenez's participation in a criminal incident during which he and Michael Easton were alleged to have kidnapped a fifteen-year-old girl, sexually assaulted her, killed her, and disposed of her body in a ravine.  *Id.*

¶ 3     A jury ultimately convicted Jimenez of the lesser included offense of second degree murder and the lesser nonincluded offense of accessory to a class 1 or 2 felony.  The jury could not reach verdicts on the kidnapping, sexual assault, and conspiracy charges.  *Id.* at 850.  The court sentenced Jimenez to consecutive terms of forty-eight and six years in the custody of the Colorado Department

of Corrections (CDOC). Divisions of this court affirmed the judgment of conviction and numerous denials of postconviction motions. *See id.* at 871; *People v. Jimenez,* (Colo. App. No. 10CA1713, Mar. 22, 2012) (not published pursuant to C.A.R. 35(f)); *People v. Jimenez,* (Colo. App. No. 17CA1120, Mar. 29, 2018) (not published pursuant to C.A.R. 35(e)); *People v. Jimenez,* (Colo. App. No. 19CA0827, June 11, 2020) (not published pursuant to C.A.R. 35(e)). The prosecution did not retry Jimenez on the remaining counts, ultimately dismissing them.

¶ 4    Almost twenty-four years later, Jimenez brought claims against the State Agencies under the Colorado Criminal Justice Records Act (CCJRA), sections 24-72-301 to -309, C.R.S. 2025, and article II, section 3, of the Colorado Constitution. He alleged that numerous statements in the presentence investigation report (PSIR)

were false and sought their correction.[1]  He also attached what he asserted was the PSIR to his complaint.[2]

¶ 5     The State Agencies filed a motion to dismiss, arguing that (1) the district court lacked subject matter jurisdiction under the coordinate jurisdiction doctrine; (2) the CCJRA was not the correct avenue to correct any inaccurate information in the PSIR; (3) the complaint failed to state a claim upon which relief could be granted under the CCJRA; and (4) the complaint failed to state a claim upon which relief could be granted under the Colorado Constitution. They also attached a copy of the complete PSIR to their motion.

---

[1] In response to the State Agencies' motion to dismiss, Jimenez claimed that his complaint sought correction not only of the PSIR but "all of the State of Colorado's Official Records" involving his offense.  But neither his complaint nor his appellate briefing are so broadly directed.  Thus, we address only his pursuit of amendments to the PSIR.

[2] The document Jimenez attached to his complaint was not the full PSIR.  Rather, the first several pages appear to be a part of the CDOC's diagnostic evaluation, which the CDOC performs on each inmate to identify the inmate's housing, security, and program needs while incarcerated.  *See* §§ 17-40-102 to -103, C.R.S. 2025. A defendant's PSIR is provided to the CDOC as part of this diagnostic process.  § 17-40-104, C.R.S. 2025.  The last two pages of Jimenez's exhibit are the second and third pages of the PSIR, which contain the relevant description of Jimenez's offense to which he objects.

¶ 6     After Jimenez filed his response to the motion to dismiss, the district court entered an order granting the motion, saying only, "The court adopts all arguments put forth by [the State Agencies] in their Motion to Dismiss and Discharge Proceedings in support of its decision to grant the dismissal."

## II.     Motion to Dismiss

¶ 7     Jimenez contends that the district court erred by dismissing his claims brought under the CCJRA and the Colorado Constitution.  We discern no reversible error.

### A.     Standard of Review

¶ 8     "Where, as here, there are no disputed issues of material fact, we review de novo a C.R.C.P. 12(b)(1) motion to dismiss for lack of subject matter jurisdiction." *Peabody Sage Creek Mining, LLC v. Colo. Dep't of Pub. Health & Env't*, 2020 COA 127, ¶ 9.

¶ 9     We also review de novo a district court's order granting a C.R.C.P. 12(b)(5) motion to dismiss.  *Williams v. Rock-Tenn Servs., Inc.*, 2016 COA 18, ¶ 9.  We accept all allegations of material fact in the complaint as true and view them in the light most favorable to the plaintiff.  *Cnty. Comm'rs v. Suncor Energy USA, Inc.*, 2025 CO 21, ¶ 25.  "There are a few exceptions to this rule, such as when the

4

facts alleged in the complaint run counter to facts of which the court can take judicial notice." *Walker v. Van Laningham*, 148 P.3d 391, 394 (Colo. App. 2006). To survive a motion to dismiss, a complaint must state a plausible claim for relief. *Warne v. Hall*, 2016 CO 50, ¶ 2.

## B.  Analysis

### 1.  Coordinate Jurisdiction

¶ 10     As a threshold matter, we agree with Jimenez that the district court erred by concluding that it lacked subject matter jurisdiction under the coordinate jurisdiction doctrine.

¶ 11     In his complaint, Jimenez alleged that he filed a request in his criminal case in Teller County district court (the sentencing court), asking for a new PSIR because of the inaccurate information in the current one. He further alleged that the sentencing court denied this request, stating, "[PSIRs] are done prior to sentencing as per [section] 16-11-102[, C.R.S. 2024]. PSIRs are not done for purposes of parole."

¶ 12     In their motion to dismiss, the State Agencies argued that the district court lacked subject matter jurisdiction over Jimenez's claims in this case — brought in El Paso County District Court —

5

under the doctrine of coordinate jurisdiction.  In addition to the PSIR, the State Agencies attached four documents: (1) a letter from Jimenez requesting appointment of counsel and for the sentencing court to correct inaccurate statements in the PSIR; (2) the sentencing court's order denying that request; (3) a second letter from Jimenez essentially asking for reconsideration of the denial of his first requests; and (4) the sentencing court's order reiterating that the request to correct the PSIR was denied and finding "no basis under [the CCJRA] to take any further action."

¶ 13     "[A] district court is without supervisory power over courts of coordinate jurisdiction; all district courts are equal in the judicial hierarchy."  *State ex rel. Dep't of Corr. v. Pena,* 911 P.2d 48, 57 (Colo. 1996).  "The jurisdiction of the trial court does not extend to a review of the decisions and judgment of a court of coordinate jurisdiction."  *Id.*  "Thus, even if a court enters an erroneous judgment, that judgment is not subject to collateral attack by another court of coordinate jurisdiction."  *Id.*

¶ 14     We disagree with the State Agencies' characterization of Jimenez's complaint as a request for the El Paso County District Court to review the sentencing court's orders.  The complaint seeks

6

relief under the CCJRA; the sentencing court explicitly took no action under the CCJRA.

¶ 15    We further reject the State Agencies' reliance on *Estates in Eagle Ridge, LLLP v. Valley Bank & Trust*, 141 P.3d 838, 844 (Colo. App. 2005), to argue that the "concept of coordinate jurisdiction 'is based on the public policies of preventing a conflict of decisions of two courts of concurrent jurisdiction and avoiding unnecessary duplication and multiplicity of suits.'" The decision in *Eagle Ridge* involved an issue not of coordinate jurisdiction but of concurrent jurisdiction. The State Agencies cite no case, nor are we aware of any, in which coordinate jurisdiction applied in a situation in which plaintiff did not ask one district court to review another district court's order or judgment. Thus, the doctrine of coordinate jurisdiction does not apply.

¶ 16    In short, the district court's adoption of the State Agencies' jurisdictional analysis was erroneous. Nevertheless, we conclude that the court properly dismissed the complaint for failing to state a plausible claim for relief.

## 2. CCJRA Claims

¶ 17    Jimenez contends that the district court erred by dismissing his claims brought under the CCJRA. We disagree.

### a. Applicable Law

¶ 18    The CCJRA provides to "[a]ny person in interest who is provided access to any criminal justice records [under the statute] the right to challenge the accuracy and completeness" of those records to the extent the records involve that person. § 24-72-307(1), C.R.S. 2025. The statute also gives that person the right to request that the records be corrected. *Id.* And if that request is refused, the person "may apply to the district court of the district wherein the record is found for an order directing the custodian of such record to show cause why he should not permit the correction of such record." § 24-72-307(4).

¶ 19    To state a plausible claim for relief under the CCJRA, therefore, Jimenez needed to allege, among other things, that there were inaccurate statements in the PSIR that needed to be corrected.

### b. Analysis

¶ 20    Jimenez alleged that the PSIR contains several false statements. Initially, we note that Jimenez misattributes the

following two statements to the PSIR: (1) "[t]he facts of the case stated that the inmate and his co-defendant both raped the victim of this case," and (2) "[a]ttitude and sentence involved a sex offense." While these statements appear in the CDOC diagnostic report, neither statement appears in the PSIR. Thus, his effort to challenge the correctness of the PSIR as to these statements must fail.

¶ 21     He further alleges that the PSIR contains the following false statements:

(1)     "[A] 16 year old female . . . had been allegedly kidnapped in El Paso [C]ounty by the inmate and his co-defendant in this case."

(2)     "Apparently, the victim was then bound at the hands with duct tape and on her mouth and then both the defendant and the co-defendant, along with the victim, drove to Teller County to a campsite."

(3)     "The victim [w]as then dumped into a creek and both the inmate and the co-defendant kept her in the creek by the inmate placing his foot on her head and the co-defendant holding her legs. According to the autopsy the victim

9

died from blunt force trauma to the head consistent with the defendant's boot. However, a drowning could not be ruled out."

Jimenez contends that these statements are inaccurate because he was not found guilty of kidnapping, sexual assault, or binding and drowning the victim.

¶ 22    Unlike the two statements discussed above, each of these statements, in substance at least, appears in the section of the PSIR titled "Details of the Offense."[3]  Significantly, however, the statements follow a prefatory observation:

> The following information was obtained from the Teller County Sheriff's Department narratives, statements made by the defendant and co-defendant, and information obtained from the district attorney in this case as to what Anthony Jimenez had been found guilty on.

---

[3] The first and third quoted statements are actually from the CDOC diagnostic report. But identical statements appear in the PSIR, with the only difference being that the diagnostic report refers to Jimenez in the quoted sections as "the inmate," while the PSIR refers to him as "this defendant" in the first statement and "the defendant" in the second.

The report then says, "According to the Register or Action charge description . . ." before providing a narrative of the allegations against Jimenez.

¶ 23    In context, therefore, these statements are based on the charge description — not the charges on which the jury convicted Jimenez.  In fact, the last sentence in this section of the PSIR unequivocally states that Jimenez was convicted of second degree murder and accessory to a crime.  Nowhere in the PSIR does it state that he was convicted of kidnapping, sexual assault, or binding and drowning the victim.

¶ 24    Notably, at the time the PSIR was prepared, the kidnapping, sexual assault, and conspiracy charges were still pending.  Thus, it was undeniably correct at the time that Jimenez was alleged to have participated in the kidnapping and the sexual assault.  Indeed, to this day, that is an accurate description of the allegations that were lodged against Jimenez.  Thus, we discern no inaccuracy or untruth in the PSIR.

¶ 25    Jimenez also contends that the PSIR must relay "the circumstances of the conviction," not the theory at the initial stage of the case.  But he cites no Colorado authority — nor are we aware

of any — to support this contention. The statutory provision governing presentence investigation reports identifies several topics that must be covered, but at no point does it require the report to set forth the circumstances of the conviction. § 16-11-102(1)(a)(I), C.R.S. 2025.[4]

¶ 26 Notably, sentencing courts may rely on evidence not presented in accordance with the due process procedures required in the guilt stage of a trial. *People v. Fritts*, 2014 COA 103, ¶ 31; *see also* CRE 1101(d)(3) (rules of evidence are inapplicable in sentencing proceedings).

¶ 27 Jimenez contends that at trial a forensic expert conclusively determined that the victim was not bound, and there was no evidence of sexual assault or drowning; therefore, these statements are false. But what a forensic expert may have testified about at trial has no bearing on the truth or accuracy of statements being attributed to sheriff department narratives; statements made by Jimenez and his codefendant; and information from the district attorney, charge description, and autopsy.

---

[4] This was also true at the time Jimenez's PSIR was prepared in May 2004. § 16-11-102(1)(a), C.R.S. 2004.

¶ 28    More importantly, as noted, Jimenez was not *acquitted* of any charges.  Rather, the jury could not come to a verdict on the kidnapping, sexual assault, and conspiracy charges.  Thus, it cannot be said that any testimony regarding the events was *conclusive* as to those charges.

¶ 29    In short, even taking Jimenez's factual allegations to be true and drawing all inferences in his favor, he cannot plausibly state a claim that the PSIR contains any inaccuracies.  Therefore, the district court did not err by dismissing Jimenez's claims under the CCJRA for failure to state a claim.[5]

### 3.    Constitutional Claim

¶ 30    Jimenez also contends that the district court erred by dismissing his claims against the State Agencies under article II, section 3, of the Colorado Constitution.  We discern no error.

---

[5] Because we reach this conclusion, and despite the district court adopting all of the State Agencies' arguments made in their motion to dismiss, we do not need to address the State Agencies' argument that Jimenez cannot seek relief under the CCJRA because he was not provided access to any criminal justice records "pursuant to" the statute.

### a. Applicable Law

¶ 31 Article II, section 3, of the Colorado Constitution provides that "[a]ll persons have certain natural, essential and inalienable rights, among which may be reckoned the right of enjoying and defending their lives and liberties; of acquiring, possessing and protecting property; and of seeking and obtaining their safety and happiness." "The Due Process Clause guarantees due process only when a person is to be deprived of life, liberty, or property." *Chambers v. Colo. Dep't of Corr.*, 205 F.3d 1237, 1242 (10th Cir. 2000) (citation omitted).

¶ 32 "An inmate has a liberty interest necessitating due process where the [C]DOC classifies the inmate as a sex offender based on preconfinement conduct not resulting in a sex offense conviction" and then takes action against the inmate if he does not participate in treatment. *Reeves v. Colo. Dep't of Corr.*, 155 P.3d 648, 652 (Colo. App. 2007). "Under these circumstances, the [C]DOC must afford an inmate a hearing so that the inmate may contest the sexual basis of the [classification]." *Id.*; *see also Fisher v. Colo. Dep't of Corr.*, 56 P.3d 1210, 1213 (Colo. App. 2002) ("[D]ue process require[s] that an inmate be afforded a hearing when the basis for

such classification is not a listed sex offense of which he stands convicted."). Significantly, neither *Reeves* nor *Fisher* prohibit the CDOC from considering charges that did not result in a conviction when classifying an inmate.

### b. Analysis

¶ 33 It is not entirely clear what the basis of Jimenez's due process claim is.

¶ 34 He alleges in his complaint that he was classified as an S-5 sex offender.[6] But he does not allege that he was denied a hearing at which he could have challenged this classification.

¶ 35 He alleges that the State Agencies disseminated false and inaccurate information about him to the public and this injured his "inalienable right to be safe." But there is no due process right "to be safe."[7] He also alleges that the description of the facts

---

[6] The State Agencies contend, without record support, that Jimenez is not classified as an "S5" sex offender (which they characterize as the highest offender level). But the CDOC diagnostic report attached to Jimenez's complaint states that Jimenez's sex offender classification is S-5. And, notwithstanding the State Agencies' contention that this allegation is "not plausible," we must accept this allegation as true. *Cnty. Comm'rs v. Suncor Energy USA, Inc.*, 2025 CO 21, ¶ 25.

[7] Even if there were a right to be safe, Jimenez alleges no set of facts to suggest that his safety was compromised.

15

underlying his arrest and original charges have interfered with his ability to be granted parole, community housing transfers, admission to CDOC programs, and clemency. In the same breath, however, he acknowledges that he does not have a liberty interest in any of those programs. Instead, he asserts that he has a right to "*consideration* to the applicant" for such programs. But it is clear from his own allegations that he has been considered for these programs and opportunities, but he has been denied.

¶ 36    Finally, relying on *Chambers*, he contends that he has a liberty interest in not being classified as a sex offender without a conviction. In *Chambers*, the Tenth Circuit Court of Appeals held that, while there is no liberty interest in simply not being labeled a sex offender, the CDOC essentially created such an interest because Chambers had been granted the maximum amount of earned time credit until he refused to participate in the treatment that his designation required. 205 F.3d at 1242. Jimenez did not allege that anything he had been receiving had been taken away as a result of his classification. Thus, his reliance on *Chambers* is unavailing.

16

¶ 37    Further, in his response to the motion to dismiss, Jimenez

stated that

> Mr. Jimenez must suffer the stain to his
> reputation for being complicit to [the victim's]
> murder, and for being an accessory to a crime.
> These liabilities are Mr. Jimenez's burden.
> However, the Official reports go beyond these
> (above cited) crimes to include stains upon Mr.
> Jimenez's reputation for sexual assault and
> kidnapping, inaccurately.  Constitutional
> safeguards protect Mr. Jimenez' reputation
> from sustaining such liabilities without due
> process of law.

But even liberally construing his claim to include a right to prevent

injury to his reputation, it must fail.  *See Gandy v. Williams*, 2019

COA 118, ¶ 8 ("[W]e liberally construe [pro se] filings while applying

the same law and procedural rules applicable to a party represented

by counsel.").  There is no inalienable right to protect one's

reputation.  *See People v. D.K.B.*, 843 P.2d 1326, 1330 (Colo. 1993)

("Neither this court nor the United States Supreme Court has held

that a convicted person has a right to privacy in his arrest and

conviction records."); *Paul v. Davis*, 424 U.S. 693, 712 (1976) ("[T]he

interest in reputation asserted in this case is neither 'liberty' nor

'property' guaranteed against state deprivation without due process

of law.").

17

¶ 38    Thus, we conclude that Jimenez has not sufficiently pleaded facts, that if true, would support a due process claim against the State Agencies.

### III.    Dismissal of Complaint with Prejudice

¶ 39    Finally, Jimenez contends that the district court erred by dismissing the complaint with prejudice.  We discern no error.

¶ 40    We review a district court's dismissal of a complaint with prejudice for an abuse of discretion.  *See Hilliard v. Klein*, 238 P.2d 882, 884 (Colo. 1951).  A court abuses its discretion if its ruling is manifestly arbitrary, unreasonable, or unfair, or is based on a misunderstanding or misapplication of the law.  *Bd. of Cnty. Comm'rs v. DPG Farms, LLC*, 2017 COA 83, ¶ 34.

¶ 41    As an initial matter, Jimenez contends that it was error for the district court to dismiss his complaint before the State Agencies filed a reply.  But how Jimenez could have been prejudiced by the opposing party not being permitted to file a reply is unclear.  Jimenez filed his response before the district court dismissed the complaint and, thus, had a complete opportunity to present his arguments.  Any procedural flaw in the State Agencies not being permitted a reply was harmless.  *See* C.R.C.P. 61 ("The court at

18

every stage of the proceeding must disregard any error or defect in the proceeding which does not affect the substantial rights of the parties.").

¶ 42 Turning to the merits of his claim, Jimenez cites no authority for the proposition that a dismissal for failure to state a claim pursuant to C.R.C.P. 12(b)(5) may not be with prejudice. And our case law is replete with C.R.C.P. 12(b)(5) dismissals with prejudice. *See, e.g., Fry v. Lee*, 2013 COA 100, ¶¶ 13, 65 (affirming C.R.C.P. 12(b)(5) dismissal with prejudice of plaintiff's defamation claims); *Graham v. Maketa*, 227 P.3d 516, 517-18 (Colo. App. 2010) (affirming C.R.C.P. 12(b)(5) dismissal with prejudice); *Denv. Parents Ass'n v. Denv. Bd. of Educ.*, 10 P.3d 662, 664-65 (Colo. App. 2000) (affirming C.R.C.P. 12(b)(5) dismissal with prejudice).

¶ 43 Nor does Jimenez provide us (or the district court) with any explanation regarding how he could have saved his complaint by amendment or otherwise had it been dismissed without prejudice. *See* C.R.C.P. 15(a). Thus, the district court did not abuse its discretion by dismissing the complaint with prejudice.

## IV.    Disposition

¶ 44 The judgment is affirmed.

JUDGE LUM and JUDGE MOULTRIE concur.